STEPHEN D. SIMONSON, as Sole Surviving Executor, etc., Respondent, *v.* THE NEW YORK CITY INSURANCE COMPANY, Appellant.

S., plaintiff's testator, was, prior to September 27, 1881, defendant's president and principal manager; his salary was $5,000 per annum. On that date an agreement, negotiated by S., was entered into between defendant and another insurance company, by which the latter agreed to re-insure all the risks of the former, it being desirous, as the agreement recited, to retire from business. Defendant agreed to continue in active business until October 1, 1881, and thereafter at the risk and expense, and on account, of the other company, which then agreed to assume, and defendant agreed to assign to it, the lease of its offices. In an action to recover

salary after October thirty-first, up to which time S. had drawn it, it appeared that at the date of the execution of said contract, S., by written agreement, entered into the employment of the other company at a salary of $7,500 and commissions, he agreeing to devote his entire time to its service, unless specially authorized to undertake other duties. S. did not sign or request any check for his salary after October, and made no claim therefor. At a regular meeting of defendant's directors, S. proposed that the salary of its secretary, which was fixed at the same time as his own, should, until its business was wound up, be paid one-half by it, and one-half by the other company. Evidence was given of the rendition of some services by S. for defendant after October, and up to the time of his death, which services were mostly of a formal character, and such as he was bound to render under his contract with the other company. *Held*, that in the absence of evidence of an agreement or understanding that the salary of S. was to continue, it could not be presumed; and that the action was not maintainable.

(Argued December 20, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 9, 1892, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are set forth in the opinion.

*Wheeler H. Peckham* for appellant. The court erred in refusing to dismiss the complaint. (*L. I. F. Co.* v. *Terbell,* 48 N. Y. 427.)

*Sidney F. Rawson* for respondent. The plaintiff is entitled to recover. (*Smith* v. *L. I. R. R. Co.,* 102 N. Y. 190; *Mather* v. *E. M. Co.,* 118 id. 629.)

EARL, J. John W. Simonson died December 28th, 1882, leaving a will in which his widow and the plaintiff, his son, were appointed executors. The widow died April 23d, 1883. On the 31st day of March, 1884, the plaintiff commenced this action to recover the salary of the testator as president of the defendant at the rate of $5,000 per annum, from the 31st day

of October, 1881, to the time of his death, and the plaintiff has recovered judgment as claimed in his complaint. The question for our determination is whether there is any evidence in this record upon which the recovery can legally stand. We think there is not.

On the 10th day of January, 1881, at a meeting of the directors of the defendant, the salary of its president was fixed at $5,000, and of its secretary at $2,500, per annum. Prior and subsequent thereto to the time of his death the testator was the president of the defendant and acted as such; and if there were nothing else the plaintiff would be entitled to recover the salary as claimed. The presumption would be that the testator served as president for the salary attached to the office, and that such was the understanding between him and the defendant. But that is merely a *prima facie* presumption which is conclusive if not rebutted, but rebuttable by facts and circumstances put in evidence. It is not sufficient as the basis of a claim for the salary when it is entirely inconsistent with all the other aspects of the case as conclusively proved.

Now, what are the other facts? The testator was the principal manager as well as president of the defendant prior to September 27th, 1881, and some time before that date, on its behalf, he entered into negotiations with the Standard Fire Office, Limited, of England, for a transfer of all its business and risks to that company, and on that date the two companies entered into an agreement, in substance as follows: After reciting that the Standard company was desirous of acquiring and purchasing the business and good will of the New York city company, and that the New York city company was desirous of re-insuring its risks and withdrawing from business, the Standard company agreed to re-insure all the risks of the New York city company which should be in force October 1st, 1881, at 12 o'clock noon, and to that end to use its best endeavors to substitute its policies in place of the policies of the New York city company, and to cancel and discharge the surrendered policies. The New York city company agreed to

continue active business until October 1st, 1881, at noon, and thereafter, at the risk, expense and for the account of the Standard company, until such time as the Standard company should have become authorized to transact business in the different states in which the New York city company had agencies. It was further agreed that the agents that should be appointed by the Standard company, whether they were those then acting for the New York city company or not, should be required to use their best efforts to obtain the surrender of the outstanding policies of the New York city company, and that if, notwithstanding every exertion so made, it should happen that persons holding such policies should refuse or neglect to make such surrender or exchange within one year from that date, then the Standard company was to use its best endeavors to cancel such policies by paying the holders thereof the return premiums as provided in the policies, and the New York city company agreed to turn over all its business to the Standard company on the 1st day of October, 1881, at noon, all losses sustained under the policies by the New York city company, and expenses up to October 1st, 1881, at noon, to be paid and discharged by the New York city company. It was further agreed that the Standard company would assume and the New York city company would assign the lease of the premises occupied by it for its offices. This agreement alone, if there were nothing else, would present very strong evidence that the salary of the testator as president was not to survive beyond the month of October, 1881. The defendant transferred all its business to the Standard company and was to go out of business. Can it be presumed that the salary of the testator, fixed for an active, going company, was thereafter to continue? Such a presumption would be against all experience. But there are other facts. On the same 27th day of September, the testator, by a written agreement, entered into the employment of the Standard company as its resident manager in the United States, at a salary of $7,500 per annum and a commission of ten per cent upon the profits of the business under his charge, and he agreed to

devote his entire time and energies to the services of the Standard company, unless specially authorized by letter from the general manager for the time being to undertake any other duties, and to carry on its business with energy and vigor, and to use all lawful means to transfer the business of the New York city company to the Standard company. So, not only did the defendant transfer all its business to the Standard company, but the testator entered into the service of that company, agreeing to give it his whole time and all his energies, and he was to receive a salary larger by $2,500 per annum, besides the commissions, than he had been receiving from the defendant. Can it be presumed that his salary as president of the defendant was to continue, and that such was the understanding between him and the defendant, and that thus he was to have two salaries amounting to $12,500 per annum, besides the commissions? We think the plaintiff should have given some proof that after the testator entered into the service of the Standard company, which succeeded to all the business of the defendant, it was understood between him and the defendant that his salary of $5,000 was to continue.

But there are still other facts. Prior to October 1st, 1881, the testator signed the monthly checks for his salary and the salaries of the secretary and other employees in the office of the defendant, and he signed a check for his salary for the month of October, 1881. Never after that did he sign or request any check for his salary or make any claim for salary, although he signed the monthly checks for the salaries of the secretary and other clerks of the defendant. He drew his salary for the month, of October probably because he had entered upon the business of that month before the transfer to the Standard company was fully accomplished. It is thus clear that he did not understand that he was entitled to any salary after October from the defendant; and this is made still plainer by another circumstance. At a regular meeting of the directors of the defendant in February, 1882, he proposed that the secretary, after the first day of May, following,

be employed by both companies, and that his salary of $2,500 be paid, $1,500 by the Standard company and $1,000 by the defendant until it was wound up.    The salary of the secretary of the defendant was fixed at $2,500 at the same time the salary of its president was fixed at $5,000.    If it was then understood that the salary of the testator, as president of the defendant, was still continued at $5,000, then was the time to deal with it, and it undoubtedly would have been dealt with in some way.

It is also a significant fact that no claim for this salary was made even in the lifetime of the widow of the testator, and that it was first claimed in July, 1883.

Upon the trial the plaintiff, as a witness on his own behalf, gave some evidence tending to show the rendition of some services by the testator as president of the defendant from October 31st, 1881, to the time of his death, and that he had express permission of the Standard company to act as president of the defendant.    These services were largely of a formal character and such as he was bound to render under his contract with the Standard company.    They were not to interfere, and did not interfere, with the services due to the Standard company under his contract with it.    Whatever these services were, for reasons we have given, we do not think that they were rendered under any contract or understanding between him and the defendant that he was to be compensated for them by the salary now claimed.

This is not a case of conflicting evidence or of doubtful inferences.    The whole evidence, fairly considered, disproved the claim of the plaintiff, and there was nothing for the consideration of the jury.

The judgment should, therefore, be reversed and a new trial granted, costs to abide event.

All concur, except PECKHAM, J., not voting, and BARTLETT, J., not sitting.

Judgment reversed.