MARY S. MARTIN et al., as Executrices, etc., Respondents, *v.* GEORGE HILLEN, Appellant.

In an action by the executors of a deceased wife against the husband to recover for the conversion of certain bonds alleged to belong to the decedent's estate, defendant claimed title; he offered in evidence reciprocal wills executed by his wife and himself some years prior to that of which plaintiffs were the executors. It was not claimed that either of said wills existed or were in force at the time of the wife's death, and neither in terms referred to the bonds in question. *Held*, that said wills were properly excluded.

Under the provision of the Code of Civil Procedure (§ 829) prohibiting a party to an action from testifying in his own behalf against the executor or administrator of a deceased person, as to a personal transaction or communication with the deceased, except when the executor or administrator has testified in his own behalf in reference thereto, the exception is confined strictly to the transaction testified to by the personal representative ; the party may not be permitted to testify to another and independent personal transaction, for the purpose of explaining, impairing or contradicting the testimony so given.

(Argued March 15, 1894; decided April 10, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order

made December 12, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict and also affirmed an order denying a motion for a new trial.

This action was brought by plaintiffs, as executrices of Anna Hillen, deceased, to recover damages for the alleged conversion of certain railroad bonds.

The facts, so far as material, are stated in the opinion.

*Charles J. Patterson* for appellant. The court erred in excluding the evidence of the defendant relating to the property of his wife on the ground that it concerned a personal transaction with the deceased. (Code Civ. Pro. § 829; *Sweet* v. *Low*, 28 Hun, 432.) A similar error was made in excluding the question by which it was intended to show that Mrs. Hillen accounted to her husband for the interest moneys on the bonds which had passed into her hands. (*Potts* v. *Myer,* 86 N. Y. 302; *Nay* v. *Curley,* 113 id. 575 ; *Marsh* v. *Brown,* 18 Hun, 319 ; *Lewis* v. *Merritt,* 98 N. Y. 209.) It is submitted that the exclusion of the answer to the question: " During all this time was your wife handling money belonging to you ? " in no wise transgresses the rule of section 829 of the Code of Civil Procedure. (*Holcomb* v. *Holcomb,* 95 N. Y. 316 ; *Nay* v. *Curley,* 113 id. 575 ; *Wadsworth* v. *Heermance,* 85 id. 639.) The court erred in refusing to direct a verdict for defendants, because the proof of the defendants' title to the bonds was so preponderating that a verdict against it would be set aside as contrary to evidence. (*Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 341; *Warner* v. *E. R. Co.,* 44 id. 465.)

*James Troy* for respondents.

O'BRIEN, J. The plaintiffs are the children by a prior marriage, and the personal representatives of the defendant's deceased wife, who died in the year 1890, leaving a will. They have recovered judgment against the defendant for the conversion of seven railroad bonds of the value of $8,050, which it was alleged belonged to their testatrix at the time of

her death. The only question litigated at the trial was, whether the bonds in fact were owned by the deceased at the time of her death, or by the defendant, her husband. On this question the evidence was almost entirely circumstantial. It tended to prove that for some twelve years before her death the deceased owned several bonds of this character which she sometimes carried upon her person, and when at home she kept in a bureau drawer, and sometimes in a box or bag in her trunk, and that her daughters, the plaintiffs, were in the habit of collecting for her the coupons detached from the bonds as they matured, up to the time of her death. She kept accounts in savings banks in her own name, which it was claimed represented, in part at least, the interest received by her from time to time upon these securities. During her last illness she kept the key of the trunk containing the bonds under her pillow. Immediately after her decease the defendant's niece, by his direction, procured the key and delivered it to him. He then opened the trunk and procured the bonds, refusing to deliver them to the plaintiffs. There was also some proof given of admissions by the defendant tending to show that he recognized the ownership in his wife of the bonds. On the other hand the defendant gave proof tending to show that he purchased the bonds about ten years before, and that the possession and use of the bonds by the deceased was for him and under his permission. In this state of the proof the learned trial judge submitted the question to the jury, and a verdict for the plaintiffs was found, which, we think, has settled the disputed fact. The finding is based upon circumstances and facts that were fairly open to different inferences, and hence the question was one for the jury. Since it cannot be said that the verdict is without any evidence to sustain it, we are concluded by the finding of the jury that the deceased was the owner of the bonds at the time of her death.

There were some exceptions taken in behalf of the defendant during the progress of the trial that are now urged as ground for reversal. The defendant's counsel produced

reciprocal wills made by the husband and the wife in which each disposed of all property in favor of the other, bearing date July 28, 1885, and offered them in evidence, but they were excluded by the court, upon the plaintiffs' objection, to which the defendant excepted. It was not claimed that either will existed or was in force at the time of the wife's death, and it in fact appeared that the one made by the wife was revoked by the subsequent will under which the plaintiffs claimed title. The contention of the learned counsel for the defendant is that these wills tended to prove such harmonious relations between the husband and wife and such a degree of affection and confidence existing between them, with respect to the property of each, as to explain the character of the wife's possession of the bonds and to weaken the plaintiffs' position that she had them as owner in her own right and not as the agent or custodian of the husband. We think that the conclusion sought to be drawn from the fact of the execution of the instruments is so remote and uncertain that it cannot be deemed a legal or logical result of the facts sought to be proved. There was not a word in the will of either that was in the slightest degree inconsistent with the claim that the wife owned the bonds at the time of her death. The instruments in themselves proved nothing as to who owned the bonds, and they did not in any degree tend to explain or contradict any fact or circumstance upon which the plaintiffs' case depended. If they tended to prove any material fact whatever it was that the wife, at the time she made the will, owned some property, at least, which she disposed of in favor of her husband, and it would be difficult to gather from the record what that property was unless she then had the bonds in question, but in this view it was a circumstance against rather than in support of the defendant's claim. I am not aware of any principle or rule of evidence that permitted the defendant to sustain his case by proof of this character. The instruments would furnish a basis for arguments on both sides which might enable them to draw remote and uncertain inferences, not the natural or legal result flowing from the exist- ⸱

ence of the fact itself, and could have no other result than to confuse and mislead the jury, and, therefore, it was not error to exclude the proof.

One of the plaintiffs testified in her own behalf to a personal transaction with the deceased at a certain time and place, in the course of which, as she swore, she saw the bonds in her possession, and further, that she had collected the interest on the securities for her mother during several years.

The defendant, when testifying in his own behalf, was asked certain questions involving personal transactions with the deceased, tending to show that the bonds belonged to him, and that his wife had the custody and use of them by his consent. That part of the question involving personal transactions was objected to by the plaintiffs as incompetent under § 829 of the Code, and the defendant excepted. These exceptions all involve the same principle, and may be considered as one. Section 829 recognizes the right of a party, suing as executor or administrator, to testify in his own behalf to a personal transaction or communication between the witness and the deceased, if it is otherwise competent. In that case the adverse party may also testify against the executor or administrator, but the testimony, if it involves a personal transaction or communication with the deceased, must be confined strictly to the same transaction or communication to which the executor or administrator has already testified in his own behalf. It was competent for the defendant, if he could, to testify in regard to the same transaction referred to by the plaintiff in her testimony. (*McLaughlin* v. *Webster*, 141 N. Y. 76.) Confining himself to that transaction he could testify to any fact or circumstance that was a part of or involved in it that tended to contradict or weaken the plaintiffs' version of it. But he could not explain, impair or contradict the plaintiffs' version by means of another and independent personal transaction or communication between himself and the deceased. The contention of the defendant's counsel is that the defendant could testify to any fact or circumstance that concerned the transaction testified to by the plaintiff, and any new or inde-

pendent personal transaction, between the defendant and the deceased, that tended to contradict it, or show that it could not have occurred, was evidence of that character and admissible. We think that such a construction of § 829 is not permissible. The words " *concerning the same transaction or communication* " were inserted in the section for the very purpose of rendering such a construction impossible. It would open the door for the admission of all the evils which the section was intended to prevent and would go far towards repealing it entirely, since the testimony of the executor or administrator bringing the action, in his own behalf, to a single distinct personal transaction or communication, would open the way for the adverse party to testify to any other personal transaction or communication, or to any number of them, upon the ground that they tended to explain or contradict the single transaction or communication given in evidence by the plaintiffs. This would practically defeat the purpose which the legislature had in view. The defendant was asked by his counsel when on the stand, whether his wife, during the time when she had the bonds, was not handling money for him. This question was objected to by the plaintiffs, the objection stating no ground, and it was sustained and the defendant excepted. Notwithstanding the objection the witness stated that he had sent money upstairs by the clerk from the store, it appearing that the parties lived over the store. He said it was sent up every day until the deceased broke her leg, which was a few months before her death. In this view the ruling did not injure the the defendant, but if the question was intended to draw out some other fact it was expressed in such vague language that it is impossible to say that the ruling was legal error. If the defendant had said that during all this time the deceased was handling money for him, that fact could have no legal bearing upon the question at issue, which was the ownership of the bonds. Handling money, unless it meant just what the defendant testified to, expressed such a vague and uncertain idea and was so far foreign to the point in controversy that the trial court might well have excluded proof of the fact what-

ever it was.    At least the proof could not furnish a basis for any legitimate inference as to who owned the bonds in question.

The judgment must, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.