WILLIAMSON COUNTY BANKING & TRUST COMPANY *et al.*
*v.* ROBERTS-BUFORD DRY GOODS COMPANY.

*(Nashville.* December Term,, 1906.)

**CORPORATIONS.** Not liable for breach of contract of service terminated by its insolvency, when.

A stockholder and director in a corporation, elected and employed under contract as its president and treasurer to direct and manage its affairs and to act as its chief executive and managing officer, is charged in law with a knowledge of its condition, and cannot recover damages, as for the corporation's breach of the contract of employment resulting from insolvency proceedings winding it up under receivership as an insolvent corporation, for the unexpired term at the date of the receivership, especially where such officer assented to the receivership, and accepted employment under the receiver for part of the unexpired term of his employment.

Numerous American and English cases cited and reviewed in the opinion.

FROM WILLIAMSON.

Appeal from the Chancery Court of Williamson County.—JOHN ALLISON, Chancellor.

EGGLESTON & EGGLESTON, for Petitioner Roberts.

H. H. COOK and R. H. CROCKETT, for Dry Goods Co.

MR. SPECIAL JUSTICE SANSOM delivered the opinion of the Court.

This case is before the court on an appeal from the decree of the court of chancery appeals; this appeal being prosecuted by J. R. Roberts, one of the claimants by petition in the case. The original bill in the case was filed March 1, 1905, by the complainant, on behalf of itself and all other creditors of the defendant Roberts-Buford Dry Goods Company, to have its affairs wound up and its assets administered as an insolvent corporation, through a receivership.

The dry goods company was organized under the laws of Tennessee; the charter having been secured in 1903. The bill was taken for confessed as to the defendant corporation, and was sustained and ordered to stand as a general creditors' bill. A receiver was appointed to take charge of and administer the assets of the corporation, under the orders of the court, and all creditors were required to intervene and prove their claims for allowance and payment out of the assets being administered. After $26,316.39 of claims had been filed and allowed, and a dividend of ninety per cent. paid thereon appellant, J. R. Roberts, filed his petition, alleging an indebtedness upon the part of the company to him of $450. This petition was filed on August 30, 1905, before the expiration of the time allowed by the court within which claims might be filed for allowance. The petition alleges that on February 14, 1905, the defendant company entered into a contract with him to pay him a sal-

ary of $100 per month for a period of twelve months thereafter, in consideration of his services; that subsequently, on March 1, 1905, the bill in this case was filed, and the business and assets of the company placed in the hands of a receiver, by whom the petitioner was employed in and about the business, and for his services was paid by the receiver the sum of $325.

The matter of this claim was by the court referred to the clerk and master, with direction that he take proof and report thereon. This order was complied with, and the master made report in favor of the petitioner, allowing him $417.50. This report of the master was excepted to, the exception was sustained by the chancellor, and the claim disallowed, and from this action of the chancellor the petitioner prosecutes this appeal.

On February 14, 1905, the petitioner, Roberts, was by the directors of the defendant company elected president and treasurer thereof for the ensuing year, and his salary or compensation was fixed by the directors at $100 per month. The petitioner was a stockholder in the company, and a director, and the president and treasurer of the company. The original bill in the case was filed about fifteen days after his election as president and treasurer, and the court of appeals find as a fact that it was properly filed to administer the assets and affairs of the corporation as an insolvent concern. That court further finds as a fact that the petitioner assented to the appointment of a receiver of the assets and affairs of the defendant company, and accepted employ-

ment at the hands of the receiver, for which he was compensated by the receiver out of the assets of the corporation. The question, and only question, presented for determination, is whether or not the petitioner is entitled to be paid his salary from the assets being administered for the period after the receiver was appointed, as a creditor's claim against the company. The chancellor held that he was not, and the court of chancery appeals affirmed that holding. The authorities are not in harmony upon this question. The English decisions are almost uniform in allowing salaries for unexpired terms of employment and seem to make practically no distinction between cases of voluntary and involuntary dissolution. *Yelland's Case,* L. R., 4 Eq., 450; *Re London & C. Co.,* L. R., 7 Eq., 550; *Re London & S. Bank,* L. R., 9 Eq., 149.

The New Jersey rule seems to be that claims for damages arising from a breach of contract by a corporation with its officers for salaries, the breach being brought about by the insolvency of the corporation, are entitled to *pro rata* payment along with the claims of other creditors from the assets of the corporation in the hands of a receiver. *Spader* v. *Mural Decoration Co.,* 47 N. J. Eq., 18, 20 Atl., 378. A like rule seems to obtain in Pennsylvania. *Potts* v. *Rose Valley Mills,* 167 Pa., 310, 31 Atl., 655. And so in Illinois, but probably based on statute in that State. *Parker* v. *Hull,* 46 Ill. App., 471.

In New York a differrent rule obtains. The New York

court, speaking to the question under consideration, says:

"There was no breach of the contract between Mix and the insurance company by either of the parties. It was in process of continued performance according to its terms, and was unbroken at the moment when the injunction order was served. That operated upon both parties at the same instant, and perpetuated the then existing rights and conditions. Before its service the company had done nothing to prevent performance, and, we must assume, was both ready and willing to perform. It had done no act which amounted to a refusal, or which made it unable, to carry out its contract. For aught that appears, it would have done so, if let alone. But it was not permitted to perform. The State, by the injunction order operating alike upon the company and its agents, paralyzed the action of both contracting parties, so that neither could perform or put the other in the wrong. Thereupon the company could not refuse and did not refuse. To put it in the wrong, and make it liable for a breach, required action on the part of Mix. As a condition precedent he was bound to show both ability and readiness to perform on his part. He could do neither. Performance by him had become illegal. It would have been a criminal contempt, and possibly a misdemeanor. There could be neither readiness nor ability to do the forbidden and unlawful acts. So that, from the necessity of the case, as there was no breach on either side before the injunction, there could

be none after." *People* v. *Globe Mutual Life Ins. Co.,*
91 N. Y., 174.

And to like effect is *Eddy* v. *Co-operative Dress Ass'n,*
3 Civ. Proc. R., 434; *Long Island Ferry Co.* v. *Tarbell,*
48 N. Y., 427; *Simonson* v. *New York Ins. Co.,* 141 N. Y.,
12, 35 N. E., 969. In Massachusetts a like doctrine is
adhered to. *Commonwealth* v. *Eagle Fire Ins. Co.,* 14
Allen, 344. And so in Arkansas (*Union Compress Co.*
v. *Douglass,* 60 Ark., 591, 31 S. W., 455) and Nebraska
(*Railroad Co.* v. *Lett,* 8 Neb., 251). So, also, in the
United States Circuit Court (*Malcomson* v. *Wappoo
Mills* [C. C.], 88 Fed., 680), and likewise in North Car-
olina (*Lenoir* v. *Linville Imp. Co.,* 126 N. C., 922, 36 S.
E., 185, 51 L. R. A., 146).

We think the American rule is that where the insol-
vency of the corporation occurs, and the court takes jur-
isdiction of the assets thereof and administers same un-
der a receivership, there is no breach of any contract,
as between the corporation and its administrative or ex-
ecutive officers, in respect of contracts pertaining to
their salary for the unexpired term of the office held by
them after the receivership.

In the North Carolina case of *Lenoir* v. *Linville Im-
provement Company,* above referred to, the court, speak-
ing in respect of the claims of the president and secre-
tary of the defunct corporation being paid out of the
assets being administered, under a petition preferred
seeking to recover for the unexpired term of the offices
to which they had been elected, says:

"The petitioners were elected to their respective offices for the purpose of having the ordinary duties of those offices performed. Salaries were assigned to them for the proper performance of those duties, and were paid for the full time that they were performed. The company never refused to perform its part of the contract, nor were the claimants in the position to perform their part after the appointment of a receiver. It is true, they do not appear to have been enjoined from doing so; but that was the practical effect upon the order appointing the receiver. He was directed to take control of all the property of the company and to assume the entire management of its affairs. This left nothing for the petitioners to do, as any interference by them with the duties of the receiver would have been a contempt of the court. It makes no difference whether their relations were severed with the company or not."

We think the reasoning of this case is sound, and meets the rights of parties in the case under consideration, being directly in point. It should be remembered that petitioner, Roberts, was a stockholder and director, as well as president and treasurer, of the defendant corporation, whose assets and affairs are being administered. He was charged in law as a director and officer with notice of its condition, financially and otherwise, and accepted his election to office with such notice. He knew and contracted, necessarily, in respect of that knowledge that, upon the happening of the contingency

that arose within less than a month of his election, creditors might invoke the aid of the courts of the country, and through that channel secure an administration of the affairs of the corporation, just as has been done. He knew — was charged with the knowledge — that upon the happening of such contingency the corporation could not carry out its contract with him, and he could not carry out his contract with it. The petitioner did not deal with the corporation, in accepting office at the compensation fixed and for the period elected, at arm's length, as would a stranger have done; but he dealt as one charged with knowledge of and privity with all of the facts, circumstances, and conditions surrounding the corporation and involving its life tenure. He was its president, its executive head. He was its treasurer, its financial arm. It would be inequitable and unjust to award him compensation under these facts and conditions for services he did not and could not perform, and from which the corporation received and could receive no benefit. The corporation itself could only exist, could only conduct its affairs and operation, could only continue its life and existence, through its directors and officers; and petitioner was both a director and officer, and, as stated, was chief officer of the corporation. If the facts of the case disclosed a surplus of assets over and above liabilities, which go to stockholders for distribution, or such other purpose as might be determined upon by them, a different question might arise; but such are not the facts. We are dealing with an insolvent

corporation, whose assets are insufficient to pay its debts, and whose insolvency was demonstrated within fifteen days after petitioner was elected its president and treasurer. He is seeking a recovery of a year's salary for a year's time, with such deductions as the master has made as and for compensation earned otherwise, and which reasonably could be assumed he would earn; and in no event did he, or could he, have served the corporation as its officer for a period of exceeding fifteen days.

We think the sounder rule is that the executive and managing officers of a corporation, who are charged in law with a knowledge of its condition and who direct and manage its affairs, should not be allowed to participate in the assets of the corporation being administered through an insolvency proceeding upon a basis of a breach of the contract of employment under their election to office, for that portion of the period to which they were elected, unexpired and unearned at the date of the receivership. This rule meets the justice and equity of this case, and therefore we affirm the decree of the court of chancery appeals, with costs.