### ADENAW v. PIFFARD et al.

(Supreme Court, Appellate Division, Fourth Department. March 9, 1910.)

1. WITNESSES (§ 175*)—COMPETENCY—TESTIMONY AGAINST REPRESENTATIVE OF DECEDENT—TRANSACTION WITH DECEDENT—ADMISSION OF TESTIMONY—DEPOSITIONS—EFFECT.

Code Civ. Proc. § 829, prohibits a party from testifying in his own behalf against an executor as to a personal transaction between witness and decedent, except where decedent's testimony is given in evidence on the same transaction. In an action by an executrix, commenced by decedent, to recover possession of personalty, in which the reply alleged that the property was delivered to defendant under "an" agreement, plaintiff read in evidence decedent's deposition taken while she was ill, to the effect that the property had been in her possession for about 15 years, but she delivered it to defendants and afterwards demanded it, being then the owner, but delivery was refused. *Held*, that the deposition was to the effect that no disposition was made of the property by decedent in any of the transactions between herself and defendants so as to permit defendants to testify fully as to the nature of all the transactions between them and decedent relating to the property.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 711–721; Dec. Dig. § 175.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

2. SET-OFF AND COUNTERCLAIM (§ 29*)—RIGHT OF ACTION.

In an action to recover possession of personalty delivered to defendant's possession by plaintiff's testatrix, a counterclaim for damages for breach of an agreement by testatrix to permit the property to remain in defendant's house until testatrix's death, when it should become the property of defendants, and to devise to defendant certain realty or its equivalent in cash, alleged facts arising out of the transaction which was the basis of plaintiff's action, and was directly connected with the subject-matter thereof, so as to be available as a counterclaim under the direct provisions of Code Civ. Proc. § 501.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*]

3. SET-OFF AND COUNTERCLAIM (§ 29*)—SUBJECT-MATTER—DAMAGES.

Where decedent in her lifetime sued to recover possession of personalty delivered to defendant, she thereby repudiated her agreement to permit defendant to keep the property until decedent's death, when it should become defendant's, and to devise defendant certain realty, so as to authorize defendant to counterclaim for damages for breach of the agreement.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Dec. Dig. § 29.*]

McLennan, P. J., and Kruse, J., dissenting.

Action by Louise C. Adenaw, as executrix of M. Emeline McMillan, against Pauline A. Piffard and another. Motion for new trial upon plaintiff's exceptions. Order to be heard in the first instance by the Appellate Division. Exceptions overruled, and judgment directed for defendants upon verdict.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Kidder M. Scott and Edwin A. Nash, for plaintiff.
John F. Connor, for defendants.

WILLIAMS, J. The plaintiff's exceptions should be overruled, and the motion for a new trial denied with costs.

The action was brought in the lifetime of plaintiff's testatrix to recover possession of personal property. The defendants were husband and wife, and by separate answers denied that the testatrix was entitled to the possession of the property, and set up an agreement by parol, whereby the testatrix agreed, among other things, that the property sought to be recovered should be put in defendants' house, and remain there during the lifetime of testatrix, and at her death should become the property of the defendant, Mrs. Piffard, and to leave to her by will real estate in New York City or cash or securities of the value of such real property, alleging breach by testatrix of the agreement and damages. The plaintiff replied to this defense, denying the agreement alleged, setting up the agreement she claimed was made, a breach thereof by Mrs. Piffard, etc. The reply was served in October, 1906. Testatrix died in October, 1907. Plaintiff was substituted in June, 1908, and the trial was had as stated above in May, 1909.

First. As to the question raised under section 829, Code Civ. Proc. After issue was joined, and, of course, before the death of the tes-

*For other cases see same topic & §·NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tatrix, she being an invalid and liable not to be able to attend the trial, her evidence was taken out of court. Upon the trial the plaintiff read from her deposition so taken evidence that she delivered the personal property sought to be recovered at the residence of the defendants about June 1898–99; that the property had theretofore been in her, testatrix's, possession for about 15 years, and she was the owner thereof when delivered to defendants, and had been for a long time prior thereto; that she demanded it of the defendants in the fall of 1903, before this action was commenced; that they refused to deliver it to her; that at the time of refusal by defendants to deliver property to her, as requested, testatrix had never parted with the ownership of the same, nor mortgaged, nor sold it; that it was removed to the residence of defendants from testatrix's home, where it had been used as furnishing therefor. The plaintiff then rested, and the defendants were called as witnesses and testified to the defense set up by them in their answer to the parol agreement with reference to the personal property and the real property in New York City. All their evidence was given under objection by plaintiff to its competency under section 829 of the Code of Civil Procedure. The defendants claimed that by the introduction of the evidence of the testatrix from the deposition the plaintiff had opened the door, and rendered the evidence of the defendants as to the various interviews with her with reference to the alleged parol agreement competent and proper.

It seems to me that the door was opened by plaintiff sufficiently to admit this evidence of the defendants. The testatrix in her deposition had testified that she delivered the property to the defendants; that she was then the owner of it, had been in possession of it for 15 years; that at the time she demanded it of defendants she had never parted with the ownership of it, nor mortgaged nor sold it. She had alleged in her reply that she delivered the property to the defendants under an agreement, and this evidence was equivalent to saying that in none of the transactions between herself and the defendants with reference thereto was any disposition made of the property to them. It was not the case of a single interview, being sworn to by a testatrix. It was saying that at no interview at any time had she disposed of any interest in the property to the defendants. If she had testified to a single interview, the evidence of defendants would necessarily have been confined to that one, and evidence as to others have been inadmissible. Martin v. Hillen, 142 N. Y. 140, 36 N. E. 803, and Rogers v. Rogers, 153 N. Y. 343, 47 N. E. 452, and cases therein referred to. Nay v. Curley, 113 N. Y. 575, 21 N. E. 698, was an action by administrators to recover a loan made defendant by their intestate. The plaintiff gave in evidence a check made by and delivered to defendant by the intestate payable to his order, indorsed by him and upon which he had received the money. This was claimed to have constituted the loan. The presumption from this evidence would have been that the check was given in payment of a debt, and not as a loan. Koehler v. Adler, 78 N. Y. 287; Poucher v. Scott, 98 N. Y. 422. In order to avoid this presumption, the plaintiffs called the defendant as their witness, and asked him if at the time he received the check the intestate owed him anything, to which he answered, "No." A prima facie case

of a loan was then made out. There was no presumption that the delivery of the check was a gift. Grey v. Grey, 47 N. Y. 552. The plaintiffs upon this proof rested their case. The defendant was then called as a witness for himself, and asked what took place between the intestate and himself when the check was delivered. An objection was made under section 829 of the Code of Civil Procedure, and this evidence was excluded. The Court of Appeals held that, while the defendant was not permitted to give the evidence unless the plaintiffs had opened the door, yet by their examination of defendant and proof that the intestate was not indebted to him they had so opened the door. It will be seen that plaintiffs' proof did not directly show any personal transaction between the parties. It merely rebutted the presumption as to the nature of the transaction, which existed before defendant's statement as to indebtedness was made. The court held that by giving this proof the plaintiffs in effect gave proof as to the transaction between the parties when the check was given, and opened the way to defendant to testify to what that full transaction was; that the plaintiffs by giving the proofs they did showed that the transaction was not a payment of debt, but by eliminating this element characterized the transaction as a loan; that the form of the question did not matter inasmuch as it in substance called for an affirmance or negation as to the character of the transaction.

In this case the property was concededly delivered by the intestate to the defendants under some agreement, by parol, made between the parties. By the issue raised in the pleadings the question was raised as to the nature of that agreement. The plaintiff proved by the evidence of the testatrix that she had never in any way parted with the ownership of the property, never mortgaged nor sold it. In giving this evidence she characterized the transactions between herself and the defendants in which the parol agreement was made, and by so doing the door was opened to the defendants to testify fully to the nature of such transactions. The same principle seems to be here involved that was decided in Nay v. Curley, above. This agreement was made not in a single transaction between the parties, but in a series of transactions, and, the evidence of the plaintiff being as it was general, related to all the various transactions, and opened the way to defendants to give evidence as to all of them. I do not deem it essential to analyze the several cases cited by counsel, but call attention to Potts v. Mayer, 86 N. Y. 302; Cole v. Sweet, 187 N. Y. 488, 80 N. E. 355; Tooley v. Bacon, 70 N. Y. 34.

Second. The other points made by the plaintiff are not well taken. (1) The counterclaim set up by the defendants arose out of the same transaction which was the basis of the plaintiff's claims, and was directly connected with the subject of the action. It was therefore available under section 501, Code Civ. Proc. Ter Kuile v. Marsland, 81 Hun, 420, 31 N. Y. Supp. 5; Empire Feed Co. v. Bank, 30 App. Div. 476, 52 N. Y. Supp. 387; Cooper v. Kipp, 52 App. Div. 250, 65 N. Y. Supp. 379, and cases therein referred to. (2) We think the counterclaim maintainable, though plaintiff was living when the action was commenced. She, having refused to carry it out, repudiated it. Schell v. Plumb, 55 N. Y. 592. (3) There seems to

have been an adequate consideration for the agreement. All concur, except McLENNAN, P. J., who dissents in an opinion and KRUSE, J., who dissents on ground stated by him.

McLENNAN, P. J. (dissenting). The action was commenced on the 26th day of April, 1906, by M. Emeline McMillan to recover the possession of certain chattels described in the complaint of the agreed value of $2,215.70, alleged to be the property of the plaintiff and to have been wrongfully detained by the defendants. It is alleged in the complaint that, before the commencement of the action, said plaintiff demanded the possession of said property, which was refused. Judgment was demanded that the possession of the chattels described in the complaint be awarded to the plaintiff; that the value thereof be fixed at $2,215.70, which was subsequently conceded, to be paid by the defendants to the plaintiff if possession of the same was not delivered to her.

The defendants, who are husband and wife, answered separately, each denying that Mrs. McMillan was entitled to the possession of the chattels in question because of an oral agreement alleged to have been made between her and the defendant Pauline A. Piffard eight years before the commencement of the action, by which it is alleged that said Pauline A. Piffard agreed to purchase the Piffard homestead at Piffard, N. Y., establish therein a home for herself, her family, and Mrs. McMillan, and maintain the same during the lifetime of Mrs. McMillan, to set aside certain rooms in said home for the exclusive use of Mrs. McMillan and her maid, furnish heat, light, and suitable board for herself and maid, furnish feed for her horses at cost, and that Mrs. McMillan, Mrs. Piffard, and her family during the lifetime of Mrs. McMillan should live together in the Piffard homestead as one family. It is alleged that by such agreement Mrs. McMillan agreed to place and leave in said home certain articles of property and furniture she then owned and possessed, the same to be left and to remain in said house for the use therein of Mrs. Piffard and her family and Mrs. McMillan during her lifetime, and that at the death of Mrs. McMillan said furniture and property should become the sole property of Mrs. Piffard. It was also agreed that Mrs. McMillan agreed that she would pay towards the maintenance of said home for board, rooms, and home privileges for herself and maid, stabling for her horses, and barn for her carriages $100 a month for at least eight months of each year, and $100 a month for such time each year as Mrs. McMillan should stay at home in excess of eight months.

It is further alleged in defendants' answers that Mrs. McMillan, in consideration of said agreement to be kept and performed by the defendant Pauline A. Piffard, and in consideration of certain prior services rendered to Mrs. McMillan by Mrs. Piffard, agreed to leave Mrs. Piffard by will a certain interest in a part of real estate situate on the east side of Broadway in the city of New York of the value of $47,833, and it is alleged that the agreement was that in case Mrs. McMillan should sell or otherwise dispose of her interest in said real estate, or for any reason fail to leave her aforesaid interest to the defendant,

then she would leave the defendant by will an amount in cash or securities equal in amount to the value of Mrs. McMillan's interest in said real estate. It is further alleged in the answers that, pursuant to the provisions of the aforesaid alleged agreement, the defendant Mrs. Piffard purchased the Piffard homestead, and in all respects carried out and performed the agreement on her part. It is then alleged that Mrs. McMillan on or about the 1st day of June, 1899, pursuant to the provisions of said agreement, placed or left in said home in the possession of the defendant the property and furniture aforesaid, including the articles mentioned in the complaint, and that said articles have since remained in the possession of the defendant, and that, by virtue of her rights, interests, and special property in said chattels, she is lawfully entitled to the possession thereof.

For a second defense and counterclaim the defendant Pauline A. Piffard, realleging the above facts, alleged that Mrs. McMillan, the plaintiff, had failed and neglected to keep and perform the said agreement on her part, had removed or caused to be removed from said home certain of the aforesaid property and furniture of the value of $1,200, and, although requested by the defendant to carry out and fulfill the provisions of said agreement, that the plaintiff Mrs. McMillan had wholly neglected and refused to comply with the provisions of said agreement, and had denied and repudiated said agreement, to the damage of the defendant in the sum of $60,559.

The then plaintiff, Mrs. McMillan, served a reply to such answers, in which she admitted, in substance, the agreement whereby the said defendant agreed to furnish board and accommodation to plaintiff and her maid at her home in Piffard, N. Y., and the use of her stable and barn for the care of plaintiff's team, carriages, and harnesses at the agreed and stipulated price of $100 a month. It is alleged that it was further stipulated that the maid employed by the plaintiff when her duties and services were not required by the plaintiff should assist in the work incident to the home of the said defendant free of charge; also, that the plaintiff should employ and pay for the services of a coachman to drive such team and care for same and the carriage and harnesses belonging to such outfit; to pay for the food and provisions of said team at the actual cost thereof, and it is alleged that it was further agreed that in consideration of the furnishing of said team with pasturage, hay, and straw, free of charge, by the defendant, she was to have the services of such coachman and team, carriage, and harnesses, free of charge, at all times when plaintiff should not require the same for her own use and enjoyment. The plaintiff in her reply denies that she ever made or entered into any agreement with the defendants or either of them to the effect that the property which this action was brought to recover should belong to or become the property of the defendants upon her death. Plaintiff further alleged that the said defendant Pauline A. Piffard did not keep her agreement as to providing a suitable home for the plaintiff; that she and her husband studiously ill treated, insulted, and misused her, and to such an extent that she was forced to leave the home which they had assumed to provide for her. In such reply it is further alleged that, so far as the

counterclaim alleged as a defense to the cause of action relates to the alleged agreement of the plaintiff to make testamentary or other disposition of her interest in the real estate or the avails or proceeds thereof, it did not accrue before the commencement of the action, and was therefore not available as a defense.

The issues thus joined were: First. Were the defendants entitled to retain possession of the chattels in question because of the alleged agreement made in respect thereto by Mrs. McMillan, to wit, the agreement on her part that at her death such chattels should become the absolute property of the defendant Pauline A. Piffard? Second. Was the agreement alleged to have been made in respect to the disposition of the real estate of the plaintiff, or its value, available to the defendants at the time their answers were served because the contingency which by the terms of the alleged agreement, to wit, the death of Mrs. McMillan, had not arrived?

After the service of such answers and the reply of Mrs. McMillan, who was an old lady past 70 years of age, and an invalid, and whose death was expected, she was examined upon commission for the purpose of preserving her testimony. Upon such examination, she testified, in substance, that the property and chattels for the possession of which this action is brought were owned by her; that she was entitled to their possession; that she had never transferred or conveyed her interest in them to the defendants or either of them. Some time after such evidence was given, Mrs. McMillan died, and her executrix was substituted as plaintiff in this case. When the case finally came on for trial, the plaintiff read in evidence the testimony given by Mrs. McMillan, taken upon the commission, substantially to the effect above indicated, and rested. The executrix had thereby established prima facie a cause of action.

The defendants were then permitted to testify, over plaintiff's objection and exception, as to the agreement alleged to have been made between them and Mrs. McMillan, substantially as set forth in their respective answers. Such evidence and all of it was objected to because inadmissible and incompetent under section 829 of the Code of Civil Procedure, and the first question presented by this appeal is whether or not such objection was well-founded.

I am inclined to concur with Brother WILLIAMS in the proposition that the plaintiff having read in evidence the testimony of her testatrix, to the effect that she, such testatrix, was the owner of the chattels in question, that she had title to the same, and had in no manner parted with such title to the defendants or otherwise, such defendants were entitled to testify in effect that the testimony of such testatrix was untrue because of the agreement which, as they alleged, was entered into between them and her, to wit, that it was agreed that such chattels should be the absolute property of the defendants upon the death of such testatrix, and, if such evidence was believed by the jury, of course, it would have defeated plaintiff's alleged cause of action. But the defendants did not stop there. They were permitted, over plaintiff's objection and exception, to establish their counterclaim about which the testatrix had not been examined and had given no evidence, and which involved the proposition that the testatrix had agreed that

the defendants upon her death should be entitled to a conveyance of her interest in her New York real estate of the value of $47,833, or in ·case such real estate had been transferred by the testatrix prior to her death of a sum of money equal to such value, and as a result of such ·testimony so given by defendants, over plaintiff's objection, the jury rendered a verdict in defendants' favor for the value of the interest in such real estate and the interest thereon since the death of Mrs. Mc-Millan, which amounted to $53,603.72, and the total judgment so ren-·dered, which included the value of the personal property which had been removed, and the interest thereon, amounted to $55,818.92.

I conclude that assuming the defendants were competent witnesses ·to prove that a contract had been entered into respecting the title to the personal property, which was the subject of the action brought by Mrs. McMillan, and to establish that by reason of such oral contract she had divested herself of such title, such defendants were not competent witnesses. to establish an alleged counterclaim which practically ab-·sorbed the greater part of the estate of the testatrix.

As before suggested, the plaintiff had given no evidence respecting such alleged counterclaim. She had not been interrogated as to wheth-·er or not she had orally agreed that the defendants upon her death should become entitled to receive between $50,000 and $60,000 of her ·estate. Her allegation and the whole of her evidence was to the effect that the personal property, the possession of which she was seeking to recover, was owned by her, belonged to her; that she had never trans-ferred or assigned it to the defendants, and therefore that she was en-titled to its possession. Assuming, as I have said, that such defend-·ants had a right to controvert that proposition and to show that they were entitled to its possession by reason of an oral agreement, which ·the jury has found existed, does it follow that notwithstanding section ·829 of the Code of Civil Procedure, because she gave such testimony relating to such ·personal property, that the defendants are at liberty ·by their unaided testimony to establish a counterclaim based upon the proposition that the testatrix also agreed orally that they should be entitled to receive between $50,000 and $60,000 of her estate upon her death? If such is the law, it is indeed a very serious thing for a ·plaintiff to bring an action in his lifetime to recover the possession of ·personal property, no matter how trivial its value, and to testify upon ·commission in anticipation of his death that he was the owner of such property, and had never transferred title to the person having posses-sion of the same, because such defendant may allege an agreement with ·the then deceased owner of the property to the effect, not only that by ·such agreement the title to the property became vested in the defend-ant, but also because as a part of such agreement the deceased agreed that such defendant should become entitled to a substantial part of his ·estate or property upon. his death.

It seems to me that, if section 829 of the Code is to be given any sub-·stantial force or effect, it ought at most only to be held that the defend-ants in this case were at liberty to disprove the agreement testified to ·by the deceased so far as it affected the property in question, and that ·they should not have been permitted to give evidence as to a personal ·transaction with the deceased, involving a substantial part of her es-

tate and about which she had given no testimony, and in reference to which she had not been interrogated. Not only were the defendants permitted to give evidence tending to establish that the deceased had orally agreed to transfer to them her interest in the New York real estate, or its value, but they were permitted, over plaintiff's objection, to give evidence of transactions alleged to have been had with the deceased which would tend to corroborate the fact that such agreement was made. Pauline A. Piffard thus testified that some years previous she had drawn a will for the deceased and was permitted to give its contents, which testimony could have been given only for the purpose of showing that the alleged contract as to the disposition of the New York property was probably made.

In the case of Martin et al. v. Hillen, 142 N. Y. 140, 144, 36 N. E. 803, 804, it was said:

"But he [the defendant] could not explain, impair, or contradict the plaintiff's version by means of another and independent personal transaction or communication between himself and the deceased. The contention of the defendant's counsel is that the defendant could testify to any fact or circumstance that concerned the transaction testified to by the plaintiff, and any new or independent personal transaction between the defendant and the deceased that tended to contradict it, or show that it could not have occurred, was evidence of that character and admissible. We think that such a construction of section 829 is not permissible. The words 'concerning the same transaction or communication' were inserted in the section for the very purpose of rendering such a construction impossible. It would open the door for the admission of all the evils which the section was intended to prevent and would go far towards repealing it entirely, since the testimony of the executor or administrator bringing the action in his own behalf to a single distinct personal transaction or communication would open the way for the adverse party to testify to any other personal transaction or communication, or any number of them, upon the ground that they tended to explain or contradict the single transaction or communication given in evidence by the plaintiffs. This would practically defeat the purpose which the Legislature had in view."

I think also that there was no consideration for the agreement, which is the basis of defendants' counterclaim in this action. By the terms of the alleged agreement entered into between the deceased and the defendants, provision was made for ample payment by the deceased for all services rendered to her. Her board and that of her maid, the care of the horses, wagons, and coachman were all provided for by the terms of the oral agreement. It is not suggested that the payments so agreed to be made by the deceased were not ample for the services rendered, and I think it cannot be determined, even construing the evidence of the defendants most favorably to them, that there was any consideration for the alleged agreement on the part of the deceased to will or transfer to them upon her death property of the value of between $50,000 and $60,000.

Finally, I conclude that the defendants did not establish their alleged counterclaim by such proof as would entitle them to recover under the rule as laid down by the Court of Appeals in Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118.

I conclude that the plaintiff's exceptions should be sustained and a new trial granted, with costs to the plaintiff to abide the event.

KRUSE, J., concurs.