### 14120. MILTON *v.* BANK OF NEWBORN.

### 14121.. BANK OF NEWBORN *v.* MILTON.

1. One of the implied terms of a contract of employment is that the employer will not permit himself, through insolvency or acts of bankruptcy (whether voluntary or involuntary), to be disabled from making performance. Thus, the insolvency of a State bank and the subsequent taking charge of it by the State superintendent of banks for the purpose of liquidation are but the natural and legal consequences of something done or omitted to be done by the bank, and constitutes an anticipatory breach of an executory contract of employment, for which the employee is entitled to compensation.

2. Under the provisions of the banking act of 1919 (Ga. L. 1919, p. 135 et seq.) the superintendent of banks is without authority or power to make it a condition precedent to the reopening of a State bank that any of its employees shall not be reinstated, unless he first finds such employees to be dishonest, incompetent, or reckless in the management of the affairs of the bank, or that they have persistently violated the laws of the State or the lawful orders of the superintendent.

DECIDED MARCH 7, 1923.

Complaint; from Newton superior court — Judge Hutcheson. November 4, 1922.

Application for certiorari in case 14120 was denied.

This is a suit by J. L. Milton against the Bank of Newborn for the alleged breach of a contract of employment. The petition is based upon the following facts: On February 1, 1921, the defendant bank employed the plaintiff as a bookkeeper for a period of twelve months, at a yearly salary of $1,100. The plaintiff faithfully and diligently performed his duties under the contract until March 4, 1921, when he was, without cause, wrongfully discharged by the defendant, although he was at all times ready, willing, and able to continue in defendant's employment and perform the duties required of him until the expiration of his term of service. The defendant filed an answer admitting the execution of the contract of employment, but set up, by way of defense, that it was not liable, because it was compelled to suspend operation

and its affairs were taken in charge by the State superintendent of banks under and by virtue of the banking laws of this State, and that thus, by operation of law, it was prevented from keeping its contractual obligation with the plaintiff. Upon the trial of the case of the defendant, having admitted a prima facie case, undertook the burden of proving its defense.

There was no substantial dispute as to the facts. It appeared that on March 4, 1921, the bank's financial condition was such that it could no longer continue operation under the law,— its legal reserve was below the amount required by law, and it could not meet its obligations. Therefore, by a resolution of the board of directors, the bank informed the State superintendent of banks of its condition, and that official, as it was his duty to do, immediately took possession of the bank and proceeded to liquidate. During the process of liquidation the superintendent of banks levied an assessment upon all stockholders to the extent of forty per cent. of the capital stock, which assessment was paid. Subsequently the stockholders applied to the superintendent for permission to reopen the bank. After a period of negotiations the superintendent agreed to the reopening of the bank upon certain conditions, one of which was that the plaintiff should not be reinstated in his position as bookkeeper. On September 21, 1921, the bank was reopened, and the plaintiff was denied the right to continue in its employment.

Upon the conclusion of the evidence both parties made a motion that the court direct a verdict in their favor, the defendant contending that it did not owe the plaintiff any amount, and the plaintiff contending that he was entitled to his salary from the date of his discharge to the expiration of his contract of employment. The court directed a verdict in favor of the plaintiff for the pro rata part of his annual salary for the period between September 21, 1921, the date of the reopening of the bank, and February 1, 1922, the date of the expiration of his contract of employment. The plaintiff and the defendant each made a motion for a new trial. The court overruled both motions, and the case is here upon separate bills of exceptions.

*King & Johnson, Greene F. Johnson,* for plaintiff.

*Loyd & Thurston,* for defendant.

BROYLES, C. J. (After stating the foregoing facts.) The plain-

tiff contends that he was entitled to a verdict for the full amount sued for, viz., his salary from the date the bank suspended operation and was taken over by the State superintendent of banks to the expiration of his contract, and that, therefore, the court erred in directing a verdict in his favor for only that amount of salary due him from the date the bank reopened to the date of the expiration of the contract. On the other hand, the defendant contends that the court erred in not directing a verdict in its favor, and in directing a verdict in favor of the plaintiff for any sum whatever. The main question presented for adjudication is whether or not damages are recoverable against a bank for its failure to perform an executory contract of employment, where performance was prevented by the insolvency of the bank and the taking possession of it by the State superintendent of banks under and by virtue of the laws of this State. This precise question seems to be one of first impression. However, treating the liquidation of an insolvent bank by the State superintendent of banks as an act in the nature of the liquidation of an insolvent corporation by a duly appointed receiver, we find many conflicting decisions bearing upon the subject. So far as we have been able to ascertain, the Georgia case most nearly in point is that of *McElheney* v. *Jasper Trading Co.,* 12 *Ga. App.* 790 (78 S. E. 737), in which it was held: " Damages are not recoverable against a corporation for its failure to perform an executory contract for the payment of wages to employees, where performance was prevented solely by the act of a court in appointing a receiver for the corporation and in enjoining all creditors and third persons from interfering with its business or property. In such case the contract is discharged because of the legal impossibility of performance by the corporation, and as to the employees the case is damnum absque injuria." The decision in that case was based, in the main, upon the ruling made in People v. Globe Mutual Life Ins. Co., 91 N. Y. 174, where a corporation had entered into a contract with a general agent for his services for a specified time and at a stipulated salary. Before the expiration of that time and while the services were being rendered, the corporation was placed in the hands of a receiver, and was restrained from the further prosecution of its business. The agent sued for damages. It was held that he could not recover. The company could not employ him, because this would be

a violation of the order of injunction. The agent could not meddle in the affairs of the company, for that equally would violate the injunction. It was damnum absque injuria. Other courts have followed the reasoning of the New York court and adjudicated the question as it was decided by our own court in the *McElheney* case, supra. For instance, see Du Pont *v.* Standard Arms Co., 9 Del. Ch. 315 (81 Atl. 1089) ; Commonwealth *v.* Eagle F. Ins. Co., 14 Allen (Mass.), 344; Lenoir *v.* Linville Improv. Co., 126 N. C. 922 (51 L. R. A. 146, 36 S. E. 185) ; Williamson County Bkg. &c. Co. *v.* Roberts-Buford Dry Goods Co., 118 Tenn. 345 (9 L. R. A. (N. S.) 644, 101 S. W. 421, 12 Ann. Cas. 579) ; Law *v.* Waldron, 230 Pa. 458 (79 Atl. 647, Ann. Cas. 1912A, 467) ; Reber *v.* Keystone Wagon Works, 19 Pa. Dist. R. 806.

However, in a decision rendered subsequently to the decision of any of the cases cited above, the Supreme Court of the United States, in the case of Central Trust Co. *v.* Chicago Auditorium Asso., 240 U. S. 581 (60 L. ed. 811), in discussing the question under consideration and the ruling made in People *v.* Globe Mutual Life Ins. Co., supra, said: " It is argued that there can be no anticipatory breach of a contract except it result from the voluntary act of one of the parties, and that the filing of an involuntary petition in bankruptcy, with adjudication thereon, is but the act of the law resulting from an adverse proceeding instituted by creditors. . This view was taken, with respect to the effect of a state proceeding restraining a corporation from the further prosecution of its business or the exercise of its corporate franchise, appointing a receiver, and dissolving the corporation, in People *v.* Globe Mut. L. Ins. Co., 91 N. Y. 174, cited with approval in some of the Federal-court decisions above referred to. In that case it did not appear that the company was the responsible cause of the action of the State, so as to make the dissolution its own act; *but, irrespective of this, we cannot accept the reasoning.* As was was said in Roehm *v.* Horst, 178 U. S. 19 (44 L. ed. 960, 20 Sup. Ct. Rep. 780) : ' The parties to a contract which is wholly executory have a right to the maintenance of the contractual relations up to the time for performance, as well as to a performance of the contract when due.' Commercial credits are; to a large extent, based upon the reasonable expectation that pending contracts of acknowledged validity will be performed in due course;

*and the same principle that entitles the promisee to continued willingness entitles him to continued ability on the part of the promisor. In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement. . . We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement within the doctrine of Roehm v. Horst, supra."* (Italics ours.) In view of this sound and forceful reasoning, coming as it does from the nation's highest tribunal, we decline to follow the ruling made by this court in the *McElheney* case, supra, and that decision, upon review, is overruled.

It follows that the argument in the instant case, that the intervention of the State, through its superintendent of banks, or, in other words, of the sovereign power, operated as vis major, loses sight of the all-important and controlling fact that such intervention must be held to be the necessary consequence of the acts of the insolvent bank itself in provoking such intervention, by the mismanagement of its affairs. The State superintendent of banks cannot intervene until the insolvent bank by its action has given him cause to act. Consequently, we think it stands to reason that a State bank cannot, as a result of its own acts of omission or commission (its own mismanagement), secure a release from the obligations of its just contracts. If corporations could be thus relieved from the obligations of their contracts, they would stand in a much more favored position than ordinary persons. In addition to the United States Supreme Court decision, supra, we cite in support of our conclusion the following cases: Isaac McLean Sons Co. *v.* William S. Butler & Co., 227 Fed. 325; Spader *v.* Mural Decoration Mfg. Co., 47 N. J. Eq. 18 (20 Atl. 378); Eddy *v.* Co-operative Dress Asso., 3 N. Y. Civ. Proc. Rep. 442; Reid *v.* Explosive Co., L. R. 19 Q. B. Div. (Eng.) 264 (56 L. J. Q. B. N. S. 388, 57 L. T. N. S. 439, 35 Week. Rep. 509).

It is also contended by the defendant that the plaintiff, in any event, was not entitled to any salary for the period beginning

September 21, 1921, the date on which the bank reopened, and ending February 1, 1922, the date on which the contract of employment expired, because the superintendent of banks made it a condition precedent to the reopening of the bank that the plaintiff be not re-employed. This contention is without merit. Section 3 of article 5 of banking act of 1919 (Ga. L. 1919, p. 135, 152) provides; "The superintendent of banks shall have the right to require the immediate removal from office of any officer or employee of any bank who shall be found by him to be dishonest, incompetent, or reckless in the management of the affairs of the bank, or who persistently violates the laws of the State, or the lawful orders of the superintendent." This is the only authority conferred upon the superintendent touching the officers or employees of State banks; and it is clear that in order to exercise this power the superintendent must first find the officer or employee to be dishonest, incompetent, or reckless in the management of the affairs of the bank, or to have persistently violated the laws of the State or the lawful orders of the superintendent. There is no affirmative evidence in this case that the superintendent so found. Therefore, under the very terms of the banking statute, the condition imposed by the superintendent, that the plaintiff should not be re-employed by the bank, was void, because not preceded by a proper finding. It is true that section 6 of article 7 of this act (Ga. L. 1919, p. 135, 156) provides that the superintendent may permit a bank to resume business upon such conditions as may be approved by him; but obviously, if these conditions refer at all to officers or employees to be retained by the bank, the above section (section 3 of article 5) would still apply, to wit, that he must first find the officer or employee to be incompetent, reckless, dishonest, etc., before prescribing such a condition.

It follows from what has been said that under the facts adduced and the law applicable thereto, a verdict in favor of the plaintiff for the full amount sued for was demanded; and therefore the judgment of the lower court, overruling the plaintiff's motion for a new trial, is reversed; and the judgment overruling the defendant's motion for a new trial is affirmed.

*Judgment reversed in case* 14120; *affirmed in case* 14121. *Luke and Bloodworth, JJ., concur.*