HENRY P. ROGERS et al., as Executors, etc., of NATHANIEL P. ROGERS, Deceased, Respondents, *v.* NATHANIEL P. ROGERS, Appellant, Impleaded with FRANK I. MAGUIRE.

1. WILL — DATE OF SPEAKING. The general rule, that a will speaks as of the date of the testator's death, is not of universal application; and when a testator refers to an actually existing state of things, his language should be understood as referring to the date of the will and not to his death.

2. THE WORDS "SUMS HERETOFORE GIVEN AND ADVANCED" CONSTRUED. A clause in a will: "I direct that no deduction shall be made from the share of any of my children by reason of any sums which I have heretofore given or advanced to or for account of either of them," *held* to apply only to gifts or advancements made prior to the date of the instrument, and not to refer to actual loans made to a child subsequent to the date of the will, for which the testator took promissory notes, nor to subsequent loans so made, not to the child himself, but to a business firm of which he was a member, and for which the testator took the firm note and other collateral security.

3. EVIDENCE — PERSONAL TRANSACTION WITH DECEASED PERSON — CODE CIV. PRO. § 829. By force of section 829 of the Code of Civil Procedure, where an executor, who is a plaintiff, testifies in his own behalf to a personal transaction between the deceased person and the defendant, the defendant becomes a competent witness in his own behalf with respect to the same transaction, but not other or different transactions.

4. DIFFERENT TRANSACTIONS WITH DECEASED PERSON. On the trial of an action brought by executors against a son of the decedent and the son's copartner, to recover money loaned by the decedent to the defendants' firm, one of the plaintiffs testified in his own behalf that he knew that the decedent had made loans to the firm, but he did not state the sources of

his knowledge. The defendant copartner, who had executed and delivered to the decedent a firm note representing the loans, and a policy on his life as collateral security for the note, testified as a witness for the plaintiffs as to the loans and as to the delivery by him of the note and policy to the decedent. The defendant son thereafter testified in his own behalf that the decedent in his lifetime delivered to him as a personal gift the firm note and the copartner's insurance policy, and produced these papers for the plaintiffs. The policy was put in evidence by the plaintiffs, but the note was not. The testimony of the defendant son, having been objected to by the plaintiffs, was stricken out by the court as incompetent under section 829 of the Code of Civil Procedure, being testimony concerning a personal transaction between the witness and the deceased person represented by the plaintiffs. *Held,* that the exclusion was proper; that the testimony of the plaintiff executor, even if it amounted to testimony of any personal transaction with the decedent, did not relate to the same transaction as that referred to by the defendant son; that the making of the loans by the decedent and the delivery of the securities therefor to him, testified to by the defendant copartner as a witness for the plaintiffs, constituted a distinct and different transaction from the alleged subsequent gift of the securities to the defendant son, and, hence, did not render his testimony as to the gift admissible as part of a transaction opened up by the plaintiffs; and that the testimony was not aided by the fact that the plaintiffs required the defendant son to produce the securities.

*Rogers* v. *McGuire,* 90 Hun, 455, affirmed.

(Argued May 12, 1897; decided June 22, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, entered November 22, 1895, which affirmed a judgment in favor of the plaintiffs entered upon a decision of the court rendered upon a trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Jacob F. Miller* for appellant. The testimony of the defendant Rogers should have been admitted. (Code Civ. Pro. §§ 828, 829; *Wilcox* v. *Corwin,* 117 N. Y. 502; *Lewis* v. *Merritt,* 98 N. Y. 208; *Nay* v. *Curley,* 113 N. Y. 577; *Grey* v. *Grey,* 47 N. Y. 552; *Taber* v. *Willets,* 44 Hun, 346; *Davis* v. *Gallagher,* 55 Hun, 596; *Merritt* v. *Campbell,* 79 N. Y. 625; *Sweet* v. *Low,* 28 Hun, 432; *Armory* v. *Dela-*

*mare*, 1 Stra. 505; *Magie* v. *Scott*, 9 Cush. 150; *Fish* v. *Skut*, 21 Barb. 333; 1 Greenl. on Ev. § 34; *Rawley* v. *Brown*, 71 N. Y. 89.) The court erred in striking out the testimony of defendant Rogers after the case had been submitted to him. (*Gall* v. *Gall*, 114 N. Y. 122; *Holmes* v. *Moffat*, 120 N. Y. 159.) The court erred in striking out the cross-examination of defendant Rogers. Such examination alone authorized the acceptance of the testimony of this witness. (*Hackstaff* v. *Hackstaff*, 29 N. Y. Supp. 11.) The policy having been called for by the plaintiffs and produced by the defendant Rogers as the policy given to secure the note, the evidence must be deemed as given by defendant Rogers himself. Any evidence showing the manner in which he obtained it and the circumstances attending his receipt of the policy was admissible, even though such testimony would not otherwise have been competent. (*Lindheim* v. *Drigs*, 31 N. Y. Supp. 870; *Stedman* v. *Runney*, 29 N. Y. Supp. 867; 25 N. Y. 170; 45 N. Y. 340; 78 N. Y. 103; 87 N. Y. 512; 92 N. Y. 284.) In a will of personal estate the testator is presumed to speak with reference to the time of his death. (*Van Vechten* v. *Van Veghten*, 8 Paige, 104; *Symes* v. *Townsend*, 33 N. Y. 563; *Wetmore* v. *Parker*, 52 N. Y. 462; *Livingston* v. *Gordon*, 84 N. Y. 136; *Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Livingston* v. *Greene*, 52 N. Y. 118.) The note and policy could be assigned by parol. (*G. N. Bank* v. *Bingham*, 118 N. Y. 349; *Risley* v. *Phenix Bank*, 83 N. Y. 318; *Hooker* v. *Eagle Bank*, 30 N. Y. 83.) There was a defect of parties plaintiff if the action is one at law. (Code Civ. Pro. §§ 446, 448, 456, 1204, 1205; *McGregor* v. *McGregor*, 35 N. Y. 221; Brown on Parties, 105; Barb. on Parties, 67; 39 Barb. 482; *Smith* v. *Lawrence*, 11 Paige, 206; *Laney* v. *Laney*, 11 N. Y. Supp. 320; *Benner* v. *Benner*, 12 N. Y. Supp. 473.)

*Thaddeus D. Kenneson* for respondents. The exception of the defendant Nathaniel P. Rogers to the action of the court in striking out his testimony to the effect that his

deceased father delivered to him the $10,000 note of Maguire & Rogers and the policy of insurance on Maguire's life, and told him that they were a gift to him individually, was not well taken. (Code Civ. Pro. § 829; *Ward* v. *Plato*, 23 Hun, 402; *Martin* v. *Hillen*, 142 N. Y. 140; *Nay* v. *Curley*, 113 N. Y. 575; *Pinney* v. *Orth*, 88 N. Y. 447.) The fact that the defendant N. P. Rogers, at the time of the trial, had in his possession the $10,000 note and the policy of insurance, was not an answer to this suit nor a justification of the testimony which was stricken out. (Code Civ. Pro. § 829; *Grey* v. *Grey*, 47 N. Y. 552.) Section 13 of the will affords no defense to this action. ( *Wetmore* v. *Parker*, 52 N. Y. 450; *Cole* v. *Scott*, 16 Sim. 259; *Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375; *Sanford* v. *Sanford*, 61 Barb. 299.) The defendant cannot now raise the point that there was a defect of parties plaintiff. (Code Civ. Pro. § 498.)

O'BRIEN, J. Nathaniel P. Rogers died on the 22d of April, 1892, leaving a will which bears date on December 26, 1885. His three sons were appointed executors of the will, and two of them, as such executors, brought this action against the other son, individually, and his former partner, to recover money loaned and advanced by the father in his lifetime to the firm which was composed of the two defendants. The amount claimed to be due from the defendants to the estate of the deceased was $50,000.

The defendants answered separately and both admitted the loan of money to them in some form and in some amount by the deceased in his lifetime. The defendant Nathaniel P. Rogers, Jr., interposed two separate affirmative defenses : (1) The Statute of Limitations; (2) the thirteenth clause of his father's will, which reads as follows: " I direct that no deduction shall be made from the share of any of my children by reason of any sums which I have heretofore given or advanced to or for account of either of them." It was claimed that this clause released him from all liability upon the loans. The defendant Maguire, the other partner, interposed as an affirma-

tive defense that the notes, representing the loan, were, during the lifetime of the deceased, transferred and delivered by him to his son, the defendant, as a gift.

On the trial it appeared that the largest portion of the debt was barred by the Statute of Limitations. But the court found that the deceased loaned to the firm the following sums, which were unpaid: $1,000, April 12, 1889; $3,000, May 25, 1889; $4,000, December 19, 1890; $6,000, January 20, 1891; each loan payable on demand. That as security for the payment of the two sums first above mentioned, the firm transferred to the deceased a real estate mortgage for $2,971, which the estate held and was worth its face.

The court directed judgment for these several sums of money, with interest from the date of the loan; and, further, that upon payment of the sums for which the mortgage was held as security, the plaintiffs should assign the same to the defendants. The defendant Maguire has never appealed from the judgment, but the other defendant has. There was no request made at the trial in behalf of the defendant Rogers to find any fact or conclusion of law claimed to arise out of the affirmative defense, and no exception was filed to any specific finding, although a general exception was taken to the whole decision.

The defendant Rogers did not claim in his answer that any of the loans had been paid or that any note representing such loans had been transferred to him by way of gift *inter vivos* by his father. Aside from the Statute of Limitations, his defense was that he had been released by the provisions of the will. That is the only defense, therefore, that need be considered, and that is urged upon the principle that the will spoke as of the date of the testator's death. That is, no doubt, the general rule, but it is not of universal application. Whenever the testator refers to an actually existing state of things his language should be understood as referring to the date of the will and not to his death. ( *Wetmore* v. *Parker*, 52 N. Y. 450; *Canfield* v. *Bostwick*, 21 Conn. 550; *Van Kleeck* v. *Dutch Church*, 20 Wend. 457; *Cole* v. *Scott*, 16 Sim. 259.)

The provision in the will which referred to money "*hereto-fore given or advanced*," applied only to such gifts or advancements as had been made prior to the date of the instrument. Moreover, it referred to sums "*given or advanced*," and these words do not refer to actual loans made subsequent to the date of the will for which the testator took promissory notes. Furthermore, the words cannot be construed as referring to subsequent loans so made, not to the child himself, but to a business firm of which he happened to be a member, and for which the testator not only took the firm note but other collateral security. (*Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375.)

The only other question of law arises upon an exception taken at the trial in behalf of the defendant Rogers, who was sworn as a witness in his own behalf, and testified, in substance, that his father, in his lifetime, delivered to him as a gift a note of $10,000, representing the last two loans above mentioned, with a policy of insurance upon the life of his partner Maguire, given as collateral security for the payment of the note. He produced these papers at the trial, and the insurance policy was given in evidence by the plaintiff, though the note was not. This testimony was objected to by the plaintiffs' counsel as incompetent under § 829 of the Code as a personal transaction between the witness, a party defendant, and his father, a deceased person, represented by the plaintiffs.

The court reserved his ruling upon the question till after the close of the trial and then struck out the testimony, sustaining the objection, and the defendant's counsel took an exception. The question having been reserved for consideration without any objection from either party, the court had the right to decide it after the close of the proofs. The defendant could have insisted upon a ruling before the close of the case, or even at the time the testimony was offered. But having virtually consented that the court might rule upon the question after the trial, he is not now in a position to raise any question as to the time and manner of the decision of the question.

It is quite clear that the testimony was open to the objection

made. It was the testimony of a party, concerning a personal transaction with the deceased, against his executors, and thus came within the plain prohibition of the section. The only ground upon which the final ruling of the court is now questioned is that the plaintiffs themselves gave testimony which rendered it competent, or, as the learned counsel for the defendant expresses it, opened the door for its admission.

Before dealing with this claim it may be well to inquire how the case would now stand if the ruling had been the other way, and the testimony had remained in the case. We have seen that the defendant set up no such defense as a transfer to him of the notes through an executed gift, though Maguire did. The defendant Rogers, therefore, was not attempting to prove, by the testimony which was excluded, any defense which he had himself pleaded, but a defense which his partner Maguire had interposed. The partner took no exception to the ruling excluding the testimony, and has not even appealed from the judgment. It is somewhat difficult to see how Rogers can claim to have been injured by the ruling, whether it was right or wrong.

Moreover, the most that he could claim for this testimony is that it tended to establish a fact which he had not pleaded, namely, a gift of the securities. He did not ask the court to find any such fact, and it cannot be said, as matter of law, that the court was bound to find it upon the testimony of an interested witness. The fact that the defendant had the note in his possession was of little consequence. He was one of the executors of his father, and had the same right and recourse to the papers of the estate, so far as appears, as the other executors. There was no defense of payment and no claim that the loan had been paid, but, on the contrary, it was claimed on all sides that it had not, and there was no presumption of a gift. (*Grey* v. *Grey*, 47 N. Y. 552.)

Apart from all this, the testimony of the witness was not free from suspicion, and there were some inconsistencies in it which might well justify its rejection. Not the least of these is the fact that long after it is claimed that the father gave

the note to the son, we find the former taking from Maguire a policy of insurance as security for its payment. If the father had made a gift of the note to the defendant it is not apparent why he was afterwards concerned in taking security for its payment. So that if the ruling of the court had been the other way, and the same judgment had been rendered, the defendant would have no ground for a reversal.

But it is quite clear that the ruling of the court excluding the testimony was entirely correct. The plaintiffs gave no proof whatever that opened the door for its admission.

The rule is that where an executor, who is a plaintiff, testifies in his own behalf to a personal transaction between the deceased and the defendant, then the defendant becomes a competent witness in his own behalf with respect to the *same transaction,* but not other or different transactions. (*Martin* v. *Hillen,* 142 N. Y. 140 ; *McLaughlin* v. *Webster,* 141 N. Y. 76.)

Now, the defendant's testimony related to an alleged gift by the deceased of the $10,000 note and policy of insurance at sometime after they came to the hands of the deceased and had a legal inception as obligations of the firm. It related to nothing else, and hence was a separate, distinct and well-defined personal transaction between himself and the deceased. The learned counsel for the defendant claims that it was admissible for these reasons :

1. One of the plaintiffs, the defendant's brother and co-executor, was sworn in behalf of the plaintiffs and testified generally that *he knew* that his father had made loans to the firm. The witness did not testify to any personal transaction whatever between his father and the firm, or any member of it. He simply testified to what he knew without even stating how he became possessed of the knowledge. He may have acquired that by hearsay either from the father or defendant. The witness simply testified to the condition of his own mind and not to any fact whatever. What, in common parlance, is called knowledge, comes to the mind in various ways, but does not necessarily imply a personal transaction or communi-

cation. Had the question which called for such an answer been objected to, it ought and would probably have been excluded since it called for no fact.

But even if this witness had sworn that he was present when Maguire delivered the $10,000 note to his father, that would not have been a personal transaction between the defendant and the deceased, and most clearly it would not be *the* personal transaction which the defendant testified to. What he attempted to prove was not any transaction in regard to the execution or delivery of the notes, or their validity or consideration, but a gift of one of them subsequently to himself by the deceased. It is not claimed that any one had introduced that subject before or had given proof of any fact bearing upon it in the slightest degree. The defendant made no question whatever as to delivery and consideration of the firm notes. What he swore to was that, being valid existing obligations of the firm, he became the owner of them by gift from his father. His brother certainly did not open the door to the admission of such testimony by simply saying that he *knew* his father had made loans to the firm.

2. But the plaintiffs also swore Maguire, the copartner, as to the loans and the delivery of the $10,000 note of the firm and the policy of insurance on his own life. The plaintiffs took the risk of attempting to prove their case by one of the defendants, who, presumptively, was a hostile witness, but that was all. They took no other risk. He was a competent witness and they had the right to call him, and by calling him they did not make the other defendant competent to testify against them. If the plaintiffs elected to prove their case by an adverse party, instead of a stranger, they could do so. The defendant had the right to cross-examine him as to any personal transaction with the deceased that he testified to and as to any other feature of his testimony. His counsel availed himself fully of that right and proved many things by him that tended to reduce the plaintiffs' claim. But the plaintiffs, by taking all the risks of adverse testimony from Maguire, did not open the door for the other defendant. (*Nay* v. *Curley*, 113

N. Y. 575.)   They did not call *him*, and so far as he was con-
cerned the prohibition of § 829 was not removed.   Moreover,
neither Maguire nor any one else made any reference in the
testimony to a transaction whereby the defendant claimed to
have become the owner of the notes by gift.   That was a
new, distinct and separate transaction that no one had made
the slightest reference to but himself.   He attempted to prove
a transaction that no witness had yet introduced.   What the
other witnesses testified to were facts tending to prove the
loan and the creation of the obligations.   What *he* testified to
were facts tending to show that the obligations were dis-
charged as to him by an executed gift from his father.   That
was clearly within the prohibition of § 829 and was properly
excluded.

3.  But it is said that the plaintiffs required the defendant
to produce the note and policy of insurance.   That added
nothing to the plaintiffs' case.   They had not counted upon
the note as a cause of action, but the original loan.   The note
was not given in evidence by the plaintiffs, but simply identi-
fied.   The policy of insurance was, but that did not prove
any personal transaction with the defendant.   The note was
given by Maguire and did not prove or tend to prove any
personal transaction between the defendant and his father.
It is quite impossible to conceive how what the witness
said with respect to the manner and the purpose under which
these two papers came to the hands of the deceased in his
lifetime opened the door to the defendant to testify that at
some time subsequently they had been transferred to him by
his father through an executed gift.

The judgment should be affirmed, with costs.

Bartlett, J. (dissenting).   While this may be regarded as
a close case, I am of the opinion that the appellant Nathaniel
P. Rogers is entitled to a reversal of the judgment appealed
from and a new trial.

The contest arises over the alleged loan of $10,000 from
appellant's late father to the firm of Maguire & Rogers, of

which the appellant was a member. The first question is: Did the plaintiffs, as the executors of the will, etc., of Nathaniel P. Rogers, deceased, go into a part of a communication or transaction between the deceased and the firm of his son, the appellant, so as to entitle the firm to show the entire transaction?

The plaintiff Henry P. Rogers, one of the executors, took the stand and swore that he knew that his father in his lifetime made loans to the firm of Maguire & Rogers.

He also testified that he was entirely familiar with his father's pecuniary affairs, and held his power of attorney.

Having introduced this general evidence as to loans, the plaintiffs put the defendant Maguire, a member of the firm, on the stand, and sought to prove by him the $10,000 loan by testator to the firm.

This witness testified that on December 19th, 1890, the testator gave his check to the firm for $4,000, and on January 20th, 1891, a second check for $6,000.

He further testified that a policy for $5,000 on his life in the Equitable Company was not in his possession, but he presumed it was in the possession of his partner, the appellant.

Plaintiffs' counsel called for its production, and, on handing over the policy, appellant's counsel said he wished it noted on the record that Nathaniel P. Rogers, Jr., personally produced the policy.

The witness then swore that what purported to be an assignment of the policy annexed to it was an assignment to Nathaniel P. Rogers, deceased, and was made to secure the two amounts of $4,000 and $6,000, already referred to as a loan.

The plaintiffs then put the assignment and policy in evidence.

Defendant's counsel, on cross-examining Maguire, showed that this $10,000 transaction was represented by the note of Maguire & Rogers, at six months, 4½% interest.

This note was produced and marked for identification, and

35

later was read in evidence. Maguire further testified, on his re-direct examination by plaintiffs' counsel, as follows:

" Q. Didn't you see him " (testator) " with reference to the giving of this policy as security for this $10,000 ? A. I had a conversation with him relative to the matter."

This was the state of the proofs as to the alleged $10,000 loan when the plaintiffs rested their case.

We thus come to the question, how far the lips of the appellant Nathaniel P. Rogers, Jr., were sealed at the trial by § 829 of the Code of Civil Procedure.

It is to be observed that this was a firm transaction with the deceased, and that the members of the firm are the only defendants; that the plaintiffs put one of the firm on the stand and proved what they claimed was the transaction between the firm and the testator.

Did this examination of a member of the firm open the whole transaction and thereby make the partners, who are sued as such, competent witnesses to testify in their own behalf as to the same transaction ?

The defendants' counsel put this appellant Nathaniel P. Rogers, Jr., on the stand and sought to prove by him what they claimed was the transaction.

It will be remembered that when defendant Maguire was on the stand as plaintiffs' witness, defendant proved on cross-examination that the loan was represented by the firm note bearing $4\frac{1}{2}\%$ interest and the note was marked for identification and afterwards read in evidence.

The defendant's counsel showed appellant this note and asked him when he first saw it.

The plaintiffs had already objected to appellant generally as an incompetent witness under section 829, and at this point renewed the objection, and the court stated that all the testimony of the witness was received subject to this objection.

The learned trial judge had previously intimated that he would suspend his ruling, and subsequently struck out all the testimony as to the delivery of the note and policy to this witness and the conversation with testator.

The witness then stated that on the day the note was given his father handed him the note and policy which was issued before that time and said he could have them.

It is true that on cross-examination the witness was uncertain whether the note had not been dated back, but his best recollection was that at the time of the transaction, whenever it was and without regard to date of note, his father handed the note and policy to him and said he could have them. We are not now called upon to consider how much weight this evidence would have with a jury when taken in connection with the cross-examination which followed and wherein witness became somewhat confused, but the question is whether this part of the transaction which tends to negative the theory of a loan is competent.

I think it is and that this conclusion is founded in reason and supported by authority.

The principle governing this case was recognized by this court in *Nay* v. *Curley* (113 N. Y. 575).

That was an action by administrators to recover an alleged loan made by their intestate to the defendant, evidenced by the intestate's check payable to defendant.

The plaintiffs called the defendant as a witness and proved by him that at the time of the delivery of the check the intestate did not owe him anything. The defendant offered himself as a witness in his own behalf, and after stating that he received the check from the drawer was asked by his counsel, " State what took place between you and him ? "

An objection to this question was sustained under section 829 of the Code. Judge ANDREWS, speaking for this court, held this ruling erroneous, and at the close of an elaborate and convincing opinion uses this language : " The examination of the defendant by the plaintiffs, as to the existence of a debt between the witness and the intestate when the check was given, directly bore upon the nature and character of the transaction, and was an indirect method of proving the transaction itself. They thereby made the defendant a competent witness to testify in his own behalf as to the same transaction."

So in the case at bar the plaintiffs put one of the firm on the stand and elicited such facts and transactions with testator as tended to prove a loan, and it was competent for the firm to show the entire transaction and prove, if possible, that, owing to the intimate relations existing between testator and appellant of father and son, the transaction, when completed under the legal forms of a loan, was at the time immediately changed into a gift.

Judge Andrews further remarked, in *Nay* v. *Curley,* already cited, and in speaking of section 829 (113 N. Y., at page 578): "But that section was not intended to abrogate the principle in the law of evidence, that where a party calls a witness and examines him as to a particular part of a communication or transaction, the other party may call out the whole of the communication or transaction bearing upon or tending to explain or qualify the particular part to which the examination of the other party was directed. This rule does not need the sanction of authority. It is founded upon obvious equity and justice. A part of the truth often implies a falsehood, and in the search for truth through the examination of witnesses, courts do not countenance partial statements of facts by witnesses."

I, therefore, think it was error for the trial judge to strike out the testimony of Nathaniel P. Rogers both in the direct and cross-examination as to the delivery of the note and policy to him by the deceased and the conversation between them, as it tended to prove the entire transaction that plaintiffs had established in part and to show that the firm of Maguire & Rogers were not indebted to plaintiffs for a loan of $10,000, made by plaintiffs' testator.

This evidence also explained the appellant's possession of the note, and rebutted the presumption, if any existed, that he held it as one of his father's executors.

The law does not presume a gift (*Grey* v. *Grey,* 47 N. Y. 552), and the burden was on defendants to show the real transaction.

The appellant makes the further point that his possession of

the note is presumptive evidence of ownership until his right to hold it is attacked.

It is true there is no affirmative proof that appellant, as executor, was in possession of any of the estate papers after his father's death ; but, as his answer admits that he qualified and entered upon the discharge of his duties as executor and is still acting as such, I prefer to rest my dissent upon the main point already discussed.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur, with O'BRIEN, J., for affirmance, except BARTLETT, J., who reads for reversal, and GRAY, J., absent.

Judgment affirmed.