OPINION OF THE COURT
Joseph D. Caputo, J.
In this action for attorney’s fees, which was tried by the court without jury the issue again turns substantially upon "that dinosaur of New York evidence law”,[1] the Dead Man’s Statute, CPLR 4519. Briefly stated, the facts are as follows: Plaintiff claimed performance of professional legal services *437 and disbursements for the defendant’s testate for matters arising out of a suit pending against the decedent in Federal court in 1971.
Plaintiff was initially contacted by deceased’s attorney of record, a Mr. Garlock, when Garlock was in hospital and unable to proceed. Plaintiff subsequently assisted the attorney of record in the research and preparation of a memorandum of law as well as appearing in Federal court with Mr. Garlock. Plaintiff has valued his services at $1,756 and has brought this action to recover that amount from the deceased’s estate. At the trial of this matter plaintiff sought to introduce a check, dated October 18, 1971, signed by the deceased and made payable to plaintiff in the amount of $200 as evidence of the retainer agreement between plaintiff and deceased. An objection was timely made and decision was reserved. The matter is presently before the court on defendant’s objection.
The Dead Man’s Statute, which is currently embodied in CPLR 4519, sets out in pertinent part: "Upon the trial of an action * * * a party or person interested in the event * * * shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor * * * except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence, concerning the same transaction or communication.”
Defendant’s objection to the introduction of the check is not well founded. The defendant confuses the introduction of tangible evidence with the statute’s exclusion of testimony by an interested witness. The basis for the exclusion is the common law’s distrust of testimony offered by a witness who has some direct interest in the result of the litigation. However, such an incapacity is no longer recognized as a complete bar to testimony in courts of this State as a party may always inquire into a witness’ interest to impeach his credibility. (CPLR 4512.) Although this procedure is most effective in the vast majority of cases which are litigated, the Legislature has not expanded its application to situations such as the one at bar where to apply the rule is to effectively nonsuit the plaintiff.
This desire to shield the deceased’s estate from false and unwarranted claims has led the Legislature to seal the lips of *438 one party when death has sealed the lips of the other.[2] However, the commentators are in agreement that the benefits conferred by the statute are minimal in relation to the often insurmountable barrier the application of the statute presents to claimants.[3] The court is also aware that many jurisdictions have done away with this incapacity and that majority view would be to allow testimony subject to impeachment. Although repeated attempts have been made to repeal the Dead Man’s Statute in this State, each has been unsuccessful[4] and the court is constrained to apply the statute, however harsh may be the ultimate result.
Initially, the court must determine the applicability of the Dead Man’s Statute to the issue of the admissibility of the check proffered by plaintiff. In this endeavor the court is guided by the principles established by the Court of Appeals in Matter of Callister (153 NY 294, 306) which bear citation at length here: "When a carefully drawn statute relating to evidence, aiming to preserve equality and to prevent unfair advantage, speaks of 'the testimony of * * * the deceased person’ as 'given in evidence,’ we think it means by testimony the sworn statements of the deceased made on some prior occasion * * * This construction is in accord both with the object of the statute and the language used in it. The context also shows that the legislature intended to give the word its ordinary meaning, as plainly appears from the next section. (830.) The promissory note given by John Callister to his wife was evidence, but it was not the testimony of the deceased person. It would be a loose and dangerous construction to hold that when an instrument executed by a dead man is read into evidence by those who represent him, the living party to the document can testify to whatever was said and done when it was executed.”
The essential distinction between testimony and tangible evidence, recognized by the court in Callister, will apply even though in the case at bar plaintiff sought to introduce the check. Although Callister was decided under sections 829 and
*439 830 of the Code of Civil Procedure, the continued vitality of this approach was recognized by the Third Department in Yager Pontiac v Danker & Sons (41 AD2d 366) when it was faced with a similar set of facts. The objection there was made to the admission of a letter of the decedent which purported to create an easement in land. The court said in part (p 368): "We reject appellant’s argument that the letter was inadmissible under CPLR 4519. Although they concede that the signature of the elder Danker is authentic, appellants object to the admission of the letter because respondent was thereby permitted to place its interpretation upon the letter’s ambiguous and obscure meaning. No testimony was admitted regarding any conduct, conversation or communication with the decedent. Nor was any testimony concerning an interpretation of the document allowed. We conclude that the admission of the document was proper.” (See Matter of Seaman, 275 App Div 484; Matter of Kennedy, 56 Misc 2d 1092.)
The court is impressed with the soundness of this position. Rules which create, testimonial disabilities are not favored and should be narrowly construed. To. accept defendant’s position would be to expand the disability created by the Dead Man’s Statute at a time when the basis for its continued application and utility have been challenged. (See 2 Wigmore, Evidence, §§ 578, 578a; Richardson, Evidence [10th ed], § 396.) Thus the court rules as a matter of law that the admission of the decedent’s check into evidence is proper and that the objection of the defendant is denied.
 The admissibility of the check however does not "open the door” for any testimony by the plaintiff as to the underlying transaction between the plaintiff and the deceased. The theory which allows the admission of the check serves as an equivalent rationale for the exclusion of the testimony. The check is admitted as a limited exception to the exclusionary mandate of the Dead Man’s Statute. The check as a document is tangible evidence and not testimony and thus any explanation of the purposes underlying the transaction would fall within the usual exclusions of the statute and would thus be inadmissible. The court is now faced with the question of the sufficiency of the evidence presented by plaintiff. The case for plaintiff rests upon the check. There has been no challenge to the authenticity of deceased’s signature. The only issue is whether this instrument, standing alone, is sufficient to satisfy plaintiff’s burden of proof as to the existence of a retainer *440 agreement between plaintiff and deceased. The court finds that it is not.
Plaintiff, the attorney here, has the burden of proof that the contract for services was made by the client with full knowledge of all the material circumstances known to the attorney. (Whitehead v Kennedy, 69 NY 462.) Plaintiff has not produced evidence of sufficient probative force to support his contention that he was retained by deceased. The check creates a presumption of payment of a debt, Nay v Curley (113 NY 575), and not necessarily of a continuing obligation on the part of the decedent, past or present. The check itself is bare of any notation as to its purpose and merely constitutes payment to the plaintiff in the stated amount. To hold that such an instrument is evidence of a retainer agreement would be to allow speculation and impermissible inference to create a contract where none existed.
I find that the plaintiff has also failed to show that he acted in anything other than an "of counsel” capacity at the behest of the attorney of record. Plaintiff’s memorandum submitted to the Federal court lists him as "of counsel” to Mr. Garlock. The attorney of record and plaintiff’s own memorandum of law to this court states that he "conferred with Mr. Garlock, Mr. Bailey’s attorney” and, further, that he "assisted Mr. Garlock in the preparation of other papers”. Nothing adduced at trial of sufficient legal weight has shown that plaintiff was retained by the deceased personally as opposed to the equally likely assumption that plaintiff appeared in the case as a result of the request of deceased’s momentarily indisposed counsel. Said counsel is now deceased. The general rule to be followed is that an attorney retained by the attorney of record in an "of counsel” capacity may not recover from the client but must bring suit against the attorney of record for a proportionate share of the fee. (Matter of Loomis, 273 NY 76; Matter of Ackerson, 50 NYS2d 359; Matter of Muscillo, 159 NYS2d 253.) This is the rule even though the attorney may have performed services from which the client ultimately benefited. (Grennan v Well Built Sales of Richmond County, 35 Misc 2d 905.)
Thus it is the finding of the court that plaintiff has failed to meet his burden of proof and that the complaint should be dismissed on the merits.
Therefore, it is ordered and adjudged that the defendant should have judgment dismissing the complaint together with *441 statutory costs and disbursements. All other motions upon which the court reserved decision are decided in accordance with this opinion.

. (Younger, Evidence, 33 NYU L Rev 1288.)

. (5 Weinstein-Korn-Miller, NY Civ Prac, par 4519.03.)

. (2 Wigmore, Evidence, §§ 578, 578a; Richardson, Evidence [10th ed], § 396; Younger, Evidence, 33 NYU L Rev 1288; Prince, Evidence, 35 NYU L Rev 1590, 1593.)

. (Second Preliminary Report of the Temporary Commission on the courts, 1958, p 268; Sixth Report to the Legislature by the Senate Finance Committee relative to the revision of the Civil Practice Act, 1962, p 405.)