**Rita A. CLARK, Plaintiff,**

v.

**Risa MEYER, Executor, etc., Defendant.**

**No. 01 CIV. 5008(LAK).**

United States District Court, S.D. New York.

March 5, 2002.

As Amended March 12, 2002.

Alan J. Tauber, Slade & Associates, P.C., New York City, for Plaintiff.

Norris D. Wolff, Anne Katz, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

More than twenty years ago, plaintiff Rita Clark entrusted an allegedly valuable painting to Catalina Meyer, a wealthy and serious art collector, for display in Ms. Meyer's East 67th Street townhouse in the hope that a person of substantial means would see it there and purchase it. The painting allegedly was turned over on the promise that Ms. Meyer would keep the painting insured for $200,000 as long as it remained in her possession. In 1997, Ms. Meyer was killed and the painting de-

stroyed in a tragic fire. There was no insurance on the painting. Ms. Clark now sues Ms. Meyer's executrix and estate to recover the $200,000. The matter is before the Court on Clark's motion for summary judgment and the defendants' cross-motion for partial summary judgment dismissing two of the three counts of the complaint and, in any event, determining that plaintiff's damages, if any, may not exceed $8,000.

## I

The essential outlines of the tale are undisputed. Clark and her late husband were given the painting in 1956 as a wedding gift. In 1968, they took it to the National Gallery of Art in Washington, D.C., to have it evaluated in accordance with the Gallery's "expert opinion" program where it was examined by H. Lester Cooke, who ran the program.[1] Cooke rendered an opinion as follows:

"Oil on panel. Style of Perugino

C. 1505 ?

Appears to be Cinquecento.

Several layers of overpaint.

From Amando Brassini, in Rome."[2]

According to plaintiff, Cooke told Ms. Clark that the painting was worth up to $250,000.

Following Cooke's examination, the Clarks placed the painting in storage with a firm in Washington, where it remained from 1968 until 1989.[3]

Ms. Clark's brother, Miguel D'Escoto, was a friend of Catalina Meyer.[4] In 1989, Ms. Clark discussed the possibility of selling the painting with D'Escoto, who in turn discussed it with Ms. Meyer.[5] While the admissibility of plaintiff's evidence concerning discussions between Clark and Meyer concerning the transfer of possession of the painting is disputed, a matter addressed below, the parties agree that Clark had the painting delivered to Meyer in the spring of 1989 and that it remained in her townhouse until the fatal fire in 1997.[6]

The parties agree also that Meyer in late April or early May 1989 contacted an insurance broker who then handled her homeowner's insurance and requested that an insurance binder be issued by her carrier to cover the painting against loss through, among other things, fire.[7] The binder duly was issued, insuring the painting effective as of May 4, 1989 in the amount of $200,000 and naming Rita Clark, whom it described as the owner of the painting, as loss payee.[8] The binder bears two handwritten notations. The first is in the hand of the broker, Ms. Cleveland, and states "Kitty/Joanne Please send an appraisal on this painting by 6/4/89. Thanks Gail". It is followed by Ms. Cleveland's signature. The second is in

---

1. Pl. 56.1 St. ¶¶ 5–6; Def. 56.1 St. ¶¶ 5–6.

2. Pl. 56.1 St. ¶ 6 & Ex. D, ¶ 2 and attached documents Meyer–0107–0113. Although defendants now seek to dispute the admissibility of the Cooke opinion on the theory that it was rendered for "personal satisfaction" and "not for use or guidance in any transaction," *see* Def. 56.1 St. ¶ 6, the parties previously stipulated that the opinion is admissible in evidence in this action. Pl. 56.1 St., Ex. D, ¶ 2. Defendants have not even suggested a basis for relieving them of their stipulation, and the Court declines to do so.

3. Pl. 56.1 St. ¶¶ 9–10; Def. 56.1 St. ¶¶ 9–10.

4. Pl. 56.1 St. ¶¶ 11–12; Def. 56.1 St. ¶¶ 11–12.

5. Pl. 56.1 St. ¶¶ 13–14.

6. *Id.* ¶ 27.

7. *Id.* ¶¶ 19, 21.

8. *Id.* ¶ 22; Cleveland Aff. ¶ 6 & Ex. A.

the handwriting of Ms. Meyer. It reads "As per request by owner Rita Clark to be $200,000". It is followed by Ms. Meyer's signature.[9]

The insurance coverage on the painting was renewed for the year April 10, 1989 to April 10, 1990.[10] At some point, however, the insurance expired, and it is undisputed that there was no specific coverage at the time of the fire.[11] Ms. Clark contends that she never was told that the coverage had expired and that she would have reclaimed the painting had she been aware of that fact.

Plaintiff's remaining claim for relief against Meyer's executrix and estate[12] is that Clark entrusted the painting to Meyer upon an express agreement that Meyer would keep the painting insured so that Clark would receive $200,000 in the event of its destruction and that Meyer breached. She seeks summary judgment on this claim. Defendants cross move to cap the damages at $8,000 on the theory that there is no evidence that could support a higher valuation of the painting.

## II

In passing on a motion for summary judgment, the Court may consider only admissible evidence,[13] and it is obliged to view the evidence in the light most favorable to the non-moving party. It may grant summary judgment only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.

Plaintiff's motion for summary judgment depends upon the premise that Meyer promised Clark that she would keep the painting insured in such a way that the plaintiff would receive $200,000 if it were destroyed while it remained in Meyer's possession. Defendants have offered no evidence to the contrary. The question therefore is whether plaintiff has adduced sufficient admissible evidence to prove such a promise.

### A. Admissibility of Plaintiff's Evidence of an Agreement to Insure

#### 1. Meyer's Alleged Promise to Clark

The first piece of evidence is Clark's testimony that she discussed the painting with Meyer and agreed to give Meyer possession "on her assurance that she would insure it for $200,000 as long as it was in her possession."[14] Defendants object that this alleged statement is barred by the New York dead man's statute.[15]

The dead man's statute[16] provides in relevant part as follows:

---

9. Cleveland Aff. ¶ 6 & Ex. A.

10. Pl. 56.1 St. ¶ 26; Def. 56.1 St. ¶ 26.

11. Although defendants claim that the contents of the Meyer home were covered under a homeowner's policy, Def. 56.1 St. ¶ 29, they do not assert that the contents coverage satisfied any contractual obligation that existed.

12. The complaint originally asserted three claims for relief. Plaintiff has abandoned the first and third claims. Pl. Reply Mem. 2 n. 1.

13. FED. R. CIV. P. 56(e); *Nora Bevs., Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123 (2d Cir.2001); *Raskin v. Wyatt,* 125 F.3d 55, 66 (2d Cir.1997).

14. Clark Aff. ¶ 14; *see also id.* ¶ 13.

15. N.Y. CPLR § 4519.

16. The plaintiff does not contest the applicability of the dead man's statute in this case. As it is a rule of substantive law rather than a purely evidentiary principle, it applies in this diversity case under the rule of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See, e.g., Rosenfeld v. Basquiat,* 78 F.3d 84, 88 (2d Cir.1996).

"Upon the trial of an action ... a party or a person interested in the event ... shall not be examined as a witness in his own behalf or interest ... against the executor ... of a deceased person ... concerning a personal transaction or communication between the witness and the deceased person ... except where the executor ... is examined in his own behalf, or the testimony of a ... deceased person is given in evidence ..., concerning the same transaction or communication."

Here, Ms. Clark is a party. Her testimony is offered in her own behalf against Meyer's executrix. It concerns a personal transaction and communications between Clark and Meyer. In consequence, assuming that the statute applies on these motions at all, it bars Clark's testimony about her communications with Meyer unless, as she claims, the exception has been satisfied.

As noted above, defendants have cross-moved for partial summary judgment determining, *inter alia*, that the limit of any damages that may be awarded is $8,000, the maximum value of the painting according to the evidence they view as admissible. The premise of the argument is that the painting is not what Cooke and, presumably, the plaintiff thought it was—in short, that it is a fake of low value. Among the evidence they have offered in support of that motion is the deposition testimony of Risa Meyer, Ms. Meyer's daughter and executrix, elicited by plaintiff, that her mother told her on a number of occasions that the painting was not a Raphael as Clark evidently believed.[17] Thus, defendants themselves rely upon evidence of personal communications between the executrix and the decedent. This in turn presents a series of questions: Does the statute apply on these motions? If it does, was the executrix's testimony a result of her being "examined in h[er] own behalf"? If so, does that testimony concern "the same transaction or communication" as that relied upon by Clark?

■ To begin with, the dead man's statute by its terms applies "[u]pon the trial of an action." Under New York practice, it may not be asserted to exclude evidence used in opposition to a motion for summary judgment.[18] The question therefore arises whether defendants may assert the statute prior to trial, albeit to exclude evidence offered in support of a motion for summary judgment. But it is not a question that need long detain us.

■ Rule 56(e) provides in relevant part that "[s]upporting and opposing affidavits [on summary judgment motions] shall ... set forth such facts as would be admissible in evidence ..." The use of the subjunctive, as well as the context of the quoted language, demonstrates that it requires that supporting and opposing affidavits must set forth facts that would be admissible in evidence if offered at trial.[19] Thus, irrespective of how New York might decide this question,[20] the federal rule re-

---

**17.** R. Meyer Dep. 14, 22, 23 (relied upon in Def. Mem. at 6–7).

**18.** *Phillips v. Joseph Kantor & Co.*, 31 N.Y.2d 307, 311–12, 338 N.Y.S.2d 882, 885, 291 N.E.2d 129 (1972).

**19.** *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir.2001).

**20.** The New York cases seem to be divided on the point. *Compare, e.g., Friedman v. Sills,* 112 A.D.2d 343, 344, 491 N.Y.S.2d 794, 795 (2d Dept.1985); *Moyer v. Briggs,* 47 A.D.2d 64, 66, 364 N.Y.S.2d 532, 535 (1st Dept.1975) (evidence excludable under dead man's statute not admissible in support of summary judgment motion), *with Dixon v. Barksdale,* 235 N.Y.S.2d 464, 465 (1962) (affidavit containing evidence excludable at trial consid-

quires exclusion of evidence on summary judgment motions which the dead man's statute would exclude at trial.

In *Hanna v. Plumer*,[21] the Supreme Court made unmistakably clear that district courts are to apply the Federal Rules of Civil Procedure, even where they conflict with state law, unless persuaded that "the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the [Rules] Enabling Act nor constitutional restrictions."[22] In light of *Hanna*, Rule 56(e) therefore would trump state law if it precluded the invocation of the dead man's statute to exclude evidence offered in support of a motion for summary judgment.

The next question is whether the executrix's testimony that her mother told her in substance that the painting was a fake was elicited while she was "examined in h[er] own behalf." It was not. The deposition testimony relied upon was adduced by plaintiff's counsel.[23] As testimony elicited on cross-examination is not the product of examination of the protected witness in his or her own behalf,[24] parity of reasoning requires the conclusion that the same is true of testimony elicited by an adversary at a deposition.[25]

This brings us to the issue whether the conversation relied upon by plaintiff concerned the same transaction or communication as that cited by the defendants. Generally speaking, the waiver provision of the statute is construed narrowly.[26] As the New York Court of Appeals wrote in the seminal case of *Martin v. Hillen*,[27] the dead man's statute:

> "recognizes the right of a party, suing as executor . . ., to testify in his own behalf to a personal transaction or communication between the witness and the deceased, if it is otherwise competent. In that case the adverse party may also testify against the executor . . ., but the testimony, if it involves a personal transaction or communication with the deceased, must be confined strictly to the same transaction or communication to which the executor or administrator has already testified in his own behalf."[28]

Here, the executrix has testified to unspecified communications with her late mother concerning the genuineness of the painting. There is no basis for concluding that those conversations related to the same personal transaction or communication with the decedent upon which the plaintiff relies. *Rosenfeld v. Basquiat*,[29] relied upon by plaintiff, is not to the contrary.

---

ered in support of summary judgment motion).

**21.** 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**22.** *Id.* at 471, 85 S.Ct. 1136.

**23.** Meyer Dep. 14, 22 23.

**24.** *E.g., Corning v. Walker*, 100 N.Y. 547, 551, 3 N.E. 290 (1885); *Sklaire v. Turner's Estate*, 12 A.D.2d 386, 388, 212 N.Y.S.2d 389, 392 (3d Dept.1961); EDITH FISCH, FISCH ON NEW YORK EVIDENCE § 300, at 194 (2d ed.1977).

**25.** *See, e.g., Matter of Van Volkenburg's*, 254 N.Y. 139, 143–44, 172 N.E. 269(1930); *Farm-*

ers' *Loan & Trust Co. v. Wagstaff*, 194 A.D. 757, 185 N.Y.S. 812 (2d Dept.1921); FISCH § 300, at 196.

**26.** FISCH § 300, at 196.

**27.** 142 N.Y. 140, 36 N.E. 803 (1894).

**28.** *Id.* at 144, 36 N.E. 803. *Accord, Estate of Wood*, 52 N.Y.2d 139, 145, 436 N.Y.S.2d 850, 852, 418 N.E.2d 365 (1981); *Rogers v. Maguire*, 153 N.Y. 343, 349, 47 N.E. 452 (1897).

**29.** 78 F.3d 84 (2d Cir.1996).

■ In view of the foregoing considerations, the New York dead man's statute applies here and has not been waived. Ms. Clark's account of her personal conversations with the late Ms. Meyer is not admissible and therefore not properly considered on this motion.

### 2. The Meyer Letter

The next piece of evidence relied upon by plaintiff is a letter, dated May 5, 1989, that Clark claims to have received from Meyer and that reads:

> "This is to notify you that I am insuring your painting with a floater (while it is in my possession) with the same Insurance Company I have my fine arts insured with.
>
> "As we discussed if anything happens to it while it is in my possession, or any accident or both, my insurance company will pay you the full amount it is insured for." [30]

■ If Clark were obliged to rely upon her own testimony to authenticate the letter, she might have a problem, either on the theory that her testimony would be barred by the dead man's statute or for want of qualifications to identify Meyer's signature.[31] But it is unnecessary to decide those issues. Clark's Rule 56.1 Statement alleges the Meyer sent her a letter informing her that the painting had been insured and enclosing a copy of the binder.[32] Defendants' response so admits.[33] In consequence, the letter has been authenticated by defendants' admission and is admissible.[34]

### 3. The Note on the Insurance Binder

■ Finally, we come to the note in Ms. Meyer's hand on the insurance binder, "As per request by owner Rita Clark to be $200,000". Cleveland's affidavit identifies the note on the binder as being in Meyer's handwriting and the signature beneath it as her signature.[35] As defendants have not objected to the admissibility of Cleveland's authentication of the handwriting, and as the dead man's statute does not require exclusion of documents executed by the deceased where they are authenticated by disinterested persons, the note on the binder is properly considered on the motion.

### B. Has Plaintiff Made Out the Alleged Agreement to Insure?

Having sorted through the evidence, the question remains whether plaintiff has established the absence of a genuine issue of material fact as to the existence of an agreement between herself and Meyer and, if so, as to the terms of the agreement.

■ The Meyer letter admits that Meyer agreed to insure the painting while it was in her possession. Meyer's note on the insurance binder demonstrates that the agreed amount of insurance was $200,000. In the absence of any evidence to the contrary—and there is none—the

---

30. Clark Aff. ¶ 15 & Ex. B. The quoted portion of the letter is typewritten. The letter bears also an unintelligible handwritten scrawl above the signature block.

31. *See Acevedo v. Audubon Mgmt.*, 280 A.D.2d 91, 95, 721 N.Y.S.2d 332, 335 (1st Dept. 2001).

32. Pl. 56.1 St. ¶ 25.

33. Def. 56.1 St. ¶ 25.

34. The dead man's statute does not apply to documentary and other tangible evidence. *E.g., Matter of Callister's,* 153 N.Y. 294, 306, 47 N.E. 268 (1897); *Kiser v. Bailey,* 92 Misc.2d 435, 437–40, 400 N.Y.S.2d 312, 313–15 (1977).

35. Cleveland Aff. ¶ 10.

Court concludes that there is no genuine issue of material fact that Meyer agreed to insure the painting for $200,000 while it was in her possession.

The more difficult question is whether she agreed to procure insurance that would pay the plaintiff the full $200,000 if anything happened to the painting. Certainly the Meyer letter establishes that this concept was discussed between Meyer and Clark. But it is uncertain whether Meyer agreed to purchase insurance so providing or whether, instead, the parties merely discussed an understanding, quite possibly mistaken, of one, the other or both women that this insurance policy or fine arts floaters in general would pay the full amount of the policy irrespective of the value of the insured article. It is not entirely clear how this uncertainty might be resolved. In any case, however, the evidence leaves no doubt that the parties agreed that Meyer would insure the painting while it was in her possession, but it is inconclusive as to the terms of the insurance that she agreed to obtain.

■ Given that Meyer allowed the insurance to expire, she plainly breached the contract because she agreed to provide some kind of insurance and she did not do so. Plaintiff is entitled to partial summary judgment to that effect. But plaintiff has not established the absence of a genuine issue of material fact as to the terms of the insurance to be obtained. In that respect, her motion is denied.

### III

Defendants cross move *in limine* to exclude any proof of damages in excess of $8,000. They assert that the liability of a bailee under a contract of bailment is the market value of the bailed item but not more than the cost of ·repair or replacement.[36] The only evidence of value, they contend, is an appraisal dated October 12, 1992, indicating the value of the painting to have been $8,000.[37]

Plaintiff does not dispute the general legal principle upon which the defendants rely. She rejoins, however, that defendants' authorities are inapposite because all deal with the measure of damages for breach of a bailment contract whereas the plaintiff here alleges breach of a contract to obtain insurance that would pay plaintiff the full $200,000 for which the painting was insured, irrespective of value. And she is right, at least as far as she goes.

■ The purpose of contract damages is to place the non-breaching party in the same economic position she would have enjoyed had the breaching party performed.[38] If there really was a contract by which Meyer was obliged to obtain insurance that would pay Clark $200,000 if the painting were destroyed, Meyer's breach of that obligation has left Clark $200,000 poorer than she would have been had Meyer performed. On the other hand, if the agreement was simply to insure the painting against loss up to a maximum of $200,000, then the measure of plaintiff's injury is the value of the painting at the time of the loss. The only arguably admis-

---

**36.** They rely upon *Procter & Gamble Distrib. Co. v. Lawrence Am. Field Warehousing Corp.,* 16 N.Y.2d 344, 353, 266 N.Y.S.2d 785, 790–91, 213 N.E.2d 873 (1965), and *Siegel v. Spear & Co.,* 195 A.D. 845, 847, 187 N.Y.S. 284, 285 (1st Dept.1921), *aff'd,* 234 N.Y. 479, 138 N.E. 414 (1923), among other cases.

**37.** Cook's alleged statement to Clark that the painting was worth "up to" $250,000 not only is inconclusive, but would be inadmissible hearsay if offered to prove value.

**38.** *E.g., Bausch & Lomb, Inc. v. Bressler,* 977 F.2d 720 (2d Cir.1992); 3 E.A. FARNSWORTH, FARNSWORTH ON CONTRACTS § 12.1, at 147 (2d ed.1990).

sible proof of value in the record is the testimony of Meyer's friend, Fernanda Bonino, who places it at $8,000. Plaintiff correctly points out that the jury would not be obliged to credit her testimony. But she overlooks the fact that the burden of proving value, if indeed value is material, is on the plaintiff. Plaintiff has no admissible evidence that it was anything at all unless, of course, she withdraws her objection to Bonino's testimony. Given that the burden is plaintiff's and that the painting has been destroyed and no longer can be appraised, she cannot sustain her burden except through Bonino. In consequence, assuming the materiality of value, defendants are entitled to cap damages at $8,000.[39]

IV

For the foregoing reasons, plaintiff's motion for summary judgment is granted to the extent that the Court determines that defendants' testatrix breached the contract with Clark by failing to maintain insurance in effect at the time of the loss and denied in all other respects. Defendants' cross motion for partial summary judgment dismissing the first and third claims for relief and limiting damages in any event to $8,000 is granted to the extent that the first and third claims for relief are dismissed and otherwise denied. Plaintiff is precluded from offering evidence that the value of the painting exceeded $8,000. In the event plaintiff establishes that Meyer contracted to pro-

vided insurance that would pay plaintiff $200,000 in the event the painting were destroyed, plaintiff is entitled to recover the sum of $200,000.

SO ORDERED.

---

**39.** *E.g., Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (when non-moving party bears burden of proof at trial, moving party is entitled to summary judgment if non-movant fails to make showing on essential element of its claim); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied

if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Frank v. Plaza Constr. Corp.,* 186 F.Supp.2d 420, —— n. 75, 2002 WL 253948, at *9 n. 75 (S.D.N.Y.2002); *Diamond Direct, LLC v. Star Diamond Group, Inc.,* 116 F.Supp.2d 525, 531 & n. 38 (S.D.N.Y.2000).