■ In the Matter of the Estate of RUSSELL ELLERS, Deceased. L. MICHAEL MACKEY, as Administrator of the Estate of RUSSELL ELLERS, Deceased, Petitioner; DAVID ELLERS, Appellant, and DAWNE ELLERS, Respondent. [765 NYS2d 910] —Kane, J. Appeal from a decree of the Surrogate's Court of Albany County (Doyle, S.), entered July 31, 2002, which, inter alia, adjudged the proportionate share of proceeds of a wrongful death insurance settlement between the parents of decedent.

Respondent David Ellers (hereinafter the father) and respondent Dawne Ellers (hereinafter the mother) were the divorced parents of two children. From their 1992 separation until March 3, 2000, they shared joint legal and physical custody of their children, Russell and Lance. On that date, the mother obtained a temporary order of protection prohibiting the father from having any contact with the children; this was later amended to allow contact only if initiated by the children. Although Lance contacted his father, Russell never did. Tragically, in July 2000, Russell, age 14, died in an automobile accident. The administrator appointed to manage Russell's estate negotiated a $250,000 settlement for conscious pain and suffering and wrongful death. He then applied to Surrogate's Court for approval and apportionment of the settlement. The court approved the settlement, allocated 5% to conscious pain and suffering and 95% to the wrongful death claim, divided the pain and suffering award equally between the father and the mother, and divided the wrongful death award 90% to the mother and 10% to the father. The father appeals, focusing primarily on the apportionment of the wrongful death award.

Proceeds of a wrongful death action must be distributed to those entitled, here the surviving parents, "in proportion to the pecuniary injuries suffered by them" (EPTL 5-4.4 [a] [1]; see Matter of Cassar, 188 AD2d 946, 948 [1992]). There is no strict mathematical formula to determine this proportion (see Matter of Duffy, 208 AD2d 1169, 1170 [1994], lv denied 85 NY2d 802 [1995]), and divorced parents who are the sole distributees will not necessarily receive equal shares (see Hanson v County of Erie, 120 AD2d 135, 136 [1986]). Surrogate's Court must use its discretion and equitable powers to properly allocate the proceeds (see Matter of Duffy, supra at 1170), considering numerous factors including " 'the relationship between decedent and those claiming to suffer pecuniary loss' " (Hanson v County of Erie, supra at 138, quoting Franchell v Sims, 73 AD2d 1, 5-6 [1980]). Russell sought the termination of visita-

tion with the father, made no attempt to contact his father for the three months before his death, expressed a desire to never return to his father's house, and exhibited happiness and improvement in school following suspension of visitation. There was proof before Surrogate's Court that the father verbally and physically abused the mother in the presence of the children, told the children he would shoot the mother if he thought he could get away with it, and verbally and physically abused Russell and his brother. Russell regularly helped his mother around the house, and expressed his desire to remain near his mother and assist her even when he became an independent adult. A preponderance of the evidence supports Surrogate's Court's determination to apportion 90% of the wrongful death award to the mother.

Surrogate's Court permitted testimony from the mother regarding conversations with Russell. The father's counsel objected once to this testimony. The court ruled that he had waived the Dead Man's Statute by eliciting testimony from the father regarding his conversations with Russell. We disagree. The mother's testimony dealt with her personal transactions and communications with her deceased son, which are prohibited by the statute (*see* CPLR 4519). The statutory protection was not waived because testimony regarding the father's communications with Russell was not elicited by the father's counsel, but by the mother's counsel on cross-examination (*see Clark v Meyer,* 188 F Supp 2d 416, 421 [2002]). Even if the father's one general allusion to a conversation with Russell could be said to have opened the door, it would only have permitted opposing testimony regarding the same transaction or communication (*see id.* at 421, citing *Martin v Hillen,* 142 NY 140 [1894]), not all communications that Russell may have had with any person at any time. While most of the mother's testimony regarding communications with Russell violated the Dead Man's Statute, the father's counsel only objected once, thereby waiving the objection to each other portion of testimony offered. Considering all the other evidence regarding statements by Russell, including a journal which was admitted without objection, the single incorrect evidentiary ruling was harmless error (*see Matter of Cristo,* 86 AD2d 700, 701 [1982]).

Mercure, J.P., Peters, Spain and Rose, JJ., concur. Ordered that the decree is affirmed, without costs.